Pueblo de Puerto Rico, recurrido, *v.* Florimar Agostini Rodríguez, recurrente.

*Número:* CC-95-33         *Resuelto:* 19 de junio de 2000

*Ángel L. Tapia Flores,* del *Bufete Tapia & Avilés,* abogado de la parte recurrente; *Carlos Lugo Fiol, Procurador General, Jackeline Novas Debién, Subprocuradora General,* y *Grisel Hernández Esteves, Procuradora General Auxiliar,* todos en representación de El Pueblo de Puerto Rico, parte recurrida.

## SENTENCIA

## I

El 10 de diciembre de 1994, Florimar Agostini Rodríguez fue denunciada por el delito menos grave de imprudencia o negligencia temeraria de la Sec. 5–201 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 871.([1]) Se le imputó que el 3 de noviembre de 1994 condujo voluntariamente su automóvil con desprecio por la seguridad de vidas y propiedades, invadió el carril contrario y causó la colisión al vehículo Honda, propiedad de su conductora Xiomara Rodríguez Aguilú, daños a su vehículo y lesiones físicas.

El 1ro de febrero de 1995 se celebró el juicio y desfiló prueba documental estipulada —Ministerio Público y defensa— y los testimonios de Rodríguez Aguilú y Ángel Vázquez García por el Ministerio Fiscal. En su defensa, Agos-

---

([1]) Ley Núm. 141 de 20 de julio de 1960, según enmendada, 9 L.P.R.A. sec. 301 *et seq.*

tini Rodríguez prestó testimonio directo y fue contrainterrogada por el Ministerio Público.

A la luz de la prueba presentada, el Tribunal la encontró culpable del delito menos grave de "invasión de carril contrario". Sec. 5–304 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 895. Mediante sentencia le impuso una multa de setenta y cinco dólares ($75) más costas. Acto seguido, el tribunal señaló y citó para una vista de daños, según lo dispuesto en la Sec. 16–102A de la citada ley, 9 L.P.R.A. sec. 1872a, advirtiendo a la perjudicada Rodríguez Aguilú que tenía que comparecer con prueba para establecer los daños.

Agostini Rodríguez —por conducto de su abogado— solicitó al tribunal que efectuara una determinación sobre negligencia comparada, de modo que sirviera para deducirse proporcionalmente del total de daños ocasionados a la propiedad. También pidió permiso para enviar un interrogatorio a la perjudicada Rodríguez Aguilú sobre los daños sufridos por su vehículo y la forma como ocurrió el accidente. Invocó el derecho al descubrimiento de prueba a base de la naturaleza civil de la vista de daños. El tribunal oportunamente denegó el planteamiento de negligencia comparada, decretando que la vista sólo sería para determinar los daños a la propiedad de la perjudicada. Accedió el uso del interrogatorio limitado a esos daños y su prueba.

Inconforme, Agostini Rodríguez acudió al Tribunal de Circuito de Apelaciones mediante *certiorari*, para cuestionar la negativa del tribunal a efectuar una determinación sobre negligencia comparada. Como señalamiento principal de error impugnó la constitucionalidad de la citada Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico: (1) en su aplicación al crear una clasificación discriminatoria y sospechosa al distinguir entre diversas reclamaciones de daños en los ámbitos civil y criminal; (2) de su faz, crear una clasificación sospechosa por razón de estatus, origen, condición social o económica, al distinguir entre personas

aseguradas y no aseguradas, y (3) contravenir el principio de igual protección de las leyes, al establecer un mecanismo judicial incompleto, inequitativo e injusto para la reclamación de daños materiales en comparación con el mecanismo civil ordinario. Solicitó que se declarase la inconstitucionalidad o se le permitiese levantar la defensa de negligencia comparada en la vista de daños.

El 12 de junio de 1995, el Tribunal de Circuito de Apelaciones (Hons. Alfonso de Cumpiano, Broco Oliveras y Miranda de Hostos, Jueces) denegó el recurso. Sostuvo la validez constitucional de la Sec. 16–102A a la luz del escrutinio racional. Expuso que aunque el pago de daños era una compensación de naturaleza civil, resultaba improcedente la defensa sobre negligencia comparada para imponerlos conforme al criterio de "cantidad razonable", ya que la sección impugnada no priva a la recurrente de instar una causa de acción y presentar sus defensas en un procedimiento civil ordinario.

A solicitud de Agostini Rodríguez revisamos.([2])

## II

Evaluados los argumentos de la recurrente en apoyo de sus señalamientos de error, los expuestos en oposición por el Procurador General, con vista al criterio mayoritario convergente —aunque por fundamentos distintos y pluralistas— se confirma la sentencia del Tribunal de Circuito de Apelaciones.

*Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para la continuación de los procedimientos, según expuesto.*

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Negrón

---

([2]) Reprodujo los mismos señalamientos de error que hizo en el recurso ante el Tribunal de Circuito de Apelaciones.

García emitió una opinión concurrente. El Juez Asociado Señor Fuster Berlingeri emitió otra opinión concurrente. El Juez Asociado Señor Rebollo López emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Hernández Denton. La Jueza Asociada Señora Naveira de Rodón emitió una opinión disidente, a la cual se unió el Juez Presidente Señor Andréu García. El Juez Asociado Señor Corrada Del Río también emitió una opinión disidente.

(*Fdo.*) Isabel Llompart Zeno
*Secretaria del Tribunal Supremo*

— O —

Opinión concurrente del Juez Asociado Señor Negrón García.

*Híbrido: "todo lo que es producto de elementos de distinta naturaleza."*([1]) Vía interpretación, nos negamos a trastocar un sencillo esquema legislativo y convertir hoy la *facultad judicial* discrecional de fijar el pago por daños a la propiedad, según la Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1872a,([2]) en *un*

---

([1]) *Diccionario de la Lengua Española*, 21ra ed., Madrid, Ed. Espasa-Calpe, 1992, pág. 777.

([2]) Dispone:

"En adición a la pena que se imponga al conductor por la infracción cometida bajo las disposiciones de este Capítulo, el tribunal *deberá* fijar una cantidad razonable para el pago de daños. El pago de daños consiste en la obligación impuesta al conductor por el tribunal de pagar a la parte perjudicada una suma en compensación por los daños y pérdidas que hubiere causado a su propiedad, como consecuencia de su acto delictivo.

"Dicho pago deberá ser fijado para ser satisfecho en dinero o la entrega de bienes equivalentes a los que fueron destruidos o dañados o por pago de reparación directa de los daños. *Las cantidades así pagadas o de los bienes entregados se deducirán de la suma que el tribunal pueda imponer por sentencia en caso de surgir de los hechos una demanda de daños y perjuicios.* El pago de daños que autoriza esta sección no incluye daños a la persona y los sufrimientos y angustias mentales.

"No se fijará el pago de daños en aquellos casos en que el conductor demuestre al tribunal que posee un seguro de responsabilidad pública que cubre los daños causados por él o que la víctima ya ha sido compensada.

"Podrá procederse a la ejecución de la sentencia imponiendo el pago de daños que autoriza esta sección en igual forma que se tratare de una sentencia dictada en

*complicado híbrido judicial incapaz de florecer. No pode-
mos fundir dos (2) procedimientos de naturalezas opuestas
e incompatibles, socavar principios elementales de la psico-
dinámica adjudicativa e infringir valores constitucionales
de la más alta estima. Ese curso decisorio no se justifica ni
aun en aras de una máxima economía procesal, a la postre
abortada; pues según esa hipótesis, nada de lo ocurrido
constituirá cosa juzgada. Expongamos suscintamente el
trasfondo fáctico y procesal.*

## I

Por colisión automovilística, Florimar Agostini Rodrí-
guez fue denunciada por conducir mediando imprudencia o
negligencia temeraria. Sec. 5–201 de la Ley Núm. 141 de
20 de julio de 1960, según enmendada, 9 L.P.R.A. sec. 871.
Previa vista en su fondo, el Tribunal de Primera Instancia,
Sala de San Juan (Hon. Katherine Silvestry, Jueza) la en-
contró culpable del delito menor incluido, invadir el carril
contrario. Sec. 5–304 de la citada ley, 9 L.P.R.A. sec. 895.

Agostini Rodríguez pidió al tribunal sentenciador que,
en una vista de daños subsiguiente (Sec. 16–102A de la
citada ley, *supra*), adjudicara la *negligencia comparada* del
perjudicado y la aplicara a la cuantía. El Ministerio Pú-
blico se opuso y el tribunal se *negó*. En alzada, el reputado
Tribunal de Circuito de Apelaciones (Hons. Alfonso de
Cumpiano, Broco Oliveras y Miranda De Hostos, Jueces)
*confirmó*.

## II

Ventilar una denuncia al amparo de la Ley de Vehículos
y Tránsito de Puerto Rico conlleva la participación de un

---

un pleito civil ordenando el pago de una cantidad, según se establece en la Regla 176
de las de Procedimiento Criminal de 1963, Ap. II del Título 34." Sec. 16–102A de la
Ley Núm. 141 de 20 de julio de 1960, según enmendada, 9 L.P.R.A. sec. 1872a.

juez, fiscal, acusado, su abogado defensor y testigos. Implica reconstruir fielmente los hechos a través de unas reglas procesales y evidenciarias mediante prueba testifical, documental y objetiva. El acusado tiene el derecho constitucional a permanecer en silencio durante *todo* el proceso. Su culpabilidad significa que se probaron, *más allá de duda razonable*, todos los elementos del delito. Contra esa convicción puede ejercer el derecho de apelación.

Fijar daños a la propiedad, según visualizado por el legislador, como veremos más adelante, es *de carácter directivo. Excluye dirimir negligencia comparada ante el mismo juez.*

De entrada, la hipótesis contraria plantea serias interrogantes: si la adjudicación de negligencia comparada *no constituye cosa juzgada*, ¿qué valor procesal y adjudicativo tiene? ¿No estamos reviviendo el espectro de juicio *de novo* del antaño en casos de tránsito que tanto recargó a los tribunales? ¿Cómo será revisable esta adjudicación? Por apelación, ¿será en el mismo caso de tránsito? ¿*Certiorari*?

*Más grave aún: el convicto, ¿está sujeto a ser compelido a testificar a solicitud del fiscal? ¿Vulnera, ante el mismo juzgador, su derecho al silencio? ¿Viene el juez obligado a hacer determinaciones de hecho y especificar el grado de culpa? De encontrar negligencia comparada —en igual proporción o una mayor atribuible al perjudicado— en justicia, ¿no sería suficiente fundamento para ese juzgador, vía reconsideración, dejar sin efecto su fallo de culpabilidad y absolver al convicto? ¿Cabría configurar esa nueva prueba como justa causa para un nuevo juicio penal? En apelación penal, ¿podría éste pedir su absolución por esa razón?*

## III

La citada Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico tiene como *único propósito* valorar y hacer viable expeditamente, sin ulterior vista evidenciaria

y descubrimiento de prueba, el pago de los daños ocasionados por el conductor convicto a la propiedad del perjudicado.[3] El juez sentenciador *no está autorizado a celebrar un minijuicio civil, abrir al descubrimiento de otra prueba y admitir prueba sobre negligencia comparada del perjudicado; menos aún, a adjudicar grados de negligencia civil.*

La intención legislativa que animó la Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, fue establecer un procedimiento rápido y de perfiles limitados. La Asamblea Legislativa *no quiso* convertir dicho trámite en una vista adjudicativa en sus méritos, como tampoco entremezclar la adjudicación de responsabilidad penal y civil en contraposición con nuestra doctrina jurisprudencial. El legislador conocía muy bien las diferencias abismales existentes en intereses tutelados afectados; a saber, *quantum* de prueba, actores, mecanismos provistos por ley y demás criterios de adjudicación de responsabilidad. *Elaboremos.*

*El estatuto presupone la celebración y culminación de un juicio criminal, rodeado de todas las garantías constitucionales, legales y procesales.* La convicción implica que el juez sentenciador ha efectuado un dictamen previo de responsabilidad contra el conductor a base de habérsele demostrado su culpabilidad *más allá de duda razonable*, producto de aquella " 'certeza moral que convence, dirige la inteligencia y satisface la razón' ". *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 761 (1981). *Imponerle a ese mismo juez, poco después, el deber de juzgar los hechos previamente dirimidos, ahora bajo la defensa de negligencia comparada, es un contrasentido evidenciario y un absurdo*

---

[3] Aplica a situaciones en las cuales el conductor de un vehículo de motor incurre en falta administrativa y como consecuencia, ocasiona un accidente en el que resulta lesionada una persona o se causan daños a la propiedad ajena. 9 L.P.R.A. sec. 1872. Por mandato de ley, dicha falta se convierte en *delito menos grave*. Véanse: P. del S. 389 de 26 de marzo de 1985, P. del S. 662 de 21 de noviembre de 1985 y el Sustitutivo a los P. del S. 389 y 662, aprobado por el Senado el 16 de abril de 1986.

*adjudicativo. Implicaría que quien dictó un fallo de culpabilidad más allá de duda razonable tenga que dejarlo sin efecto o en suspenso, para poder subsiguientemente revisitar y revaluar los hechos poco antes dirimidos, y determinar la negligencia, si alguna, en que pudo incurrir el perjudicado. El mismo juez estará obligado a descartarlos; aun cuando poco antes, tales hechos, en su espíritu y conciencia, fueron percibidos y depurados por el prisma más riguroso del proceso criminal, cuyo epílogo fue la culpabilidad más allá de duda razonable.* "Todo derecho nace, se transforma o se extingue como consecuencia de un hecho. De aquí que la primera función del juez en el proceso sea la investigación de los hechos, para luego, en la sentencia, deducir el derecho que surja de ellos." H. Alsina, *Tratado teórico práctico de derecho procesal civil y comercial*, Buenos Aires, Ed. Ediar, 1961, T. III, págs. 221–222.

*Semejante adjudicación y readjudicación de la negligencia penal y civil provoca un antagonismo conceptual en la psicogenética del juzgador,*([4]) *al enfrentarlo a dos (2) medidas ("quantum") de prueba distintas y ordenamientos jurídicos muy distantes.*([5]) *Le impondría el deber de subsumir*

---

([4]) Constitucionalmente, el proceso criminal entraña el mayor *quantum* de prueba en nuestro ordenamiento jurídico. El Ministerio Fiscal debe presentar prueba suficiente y satisfactoria para establecer *más allá de duda razonable* cada uno de los elementos del delito. *Pueblo v. Sánchez Molina*, 134 D.P.R. 577 (1993); *Pueblo v. Rodríguez Román*, 128 D.P.R. 121 (1991); *Pueblo v. González Beníquez*, 111 D.P.R. 167 (1987).

Esta exigencia en el *quantum* de prueba se justifica en el gran interés social de minimizar la posibilidad de una adjudicación errónea en un proceso criminal, donde está en juego la libertad del acusado. En cambio, la responsabilidad civil está dirigida a resarcir el daño y el promovente de la acción sólo debe demostrar, *por preponderancia de la prueba*, que la conducta culposa o negligente del demandado fue el elemento que con mayor probabilidad lo causó. *Vda. de López v. E.L.A.*, 104 D.P.R. 178 (1975); *López v. Hosp. Presbiteriano, Inc.*, 107 D.P.R. 197 (1978); *Torres Trumbull v. Pesquera*, 97 D.P.R. 338 (1969). Comprometido sólo el interés pecuniario de las partes, el Estado delega esa contingencia en los litigantes privados.

([5]) El profesor Brau del Toro nos dice que "la responsabilidad penal persigue fines distintos a los de la responsabilidad civil. Aquella da abertura a una acción pública de carácter represivo; ésta, a una simple acción privada conducente a una indemnización". H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, San Juan, Pub. J.T.S., 1986, Vol. I, Cap. I, Sec. 1.08, pág. 14. Más aún, ambos procesos persiguen objetivos opuestos. La primera, disuadir y rehabilitar al criminal; la otra, indemnizar a la víctima.

*su criterio penal de negligencia, "más allá de duda razonable" en el de "preponderancia de la prueba" civil.*(6)

Ciertamente, una solución contraria pondría en *entredicho la objetividad y corrección* de la determinación de culpabilidad anterior hecha por el juez sentenciador. A fin de cuentas, los criterios utilizados para establecer la responsabilidad civil no son suficientes para imponer responsabilidad criminal a un acusado. Así, en *Pueblo v. Rodríguez*, 47 D.P.R. 600, 614 (1934), resolvimos que la *negligencia criminal*, a diferencia de la *civil*, no es una mera falta de cuidado, sino que requiere un grado de negligencia mayor que el exigido para obtener una indemnización en lo civil.

## IV

*Otra solución no sólo le impide al perjudicado estar representado por un abogado de su selección y confianza, sino que le impone al Ministerio Público la pesada carga de litigar una reclamación civil en su favor, con el consabido desvío de los escasos recursos con que cuenta el Departamento de Justicia.*

---

(6) No cabe, por analogía, fundamentar la decisión mayoritaria en que nuestro ordenamiento permite que la paternidad de un menor sea adjudicada dentro del procedimiento por incumplimiento de la obligación alimentaria conforme el Art. 158 del Código Penal, 33 L.P.R.A. sec. 4241, de carácter mixto penal y civil. *Pueblo v. Zayas Colón*, 139 D.P.R. 119 (1995). Esa disposición prohíbe y tipifica penalmente el incumplimiento de una obligación alimentaria filial y a la vez provee para declarar la filiación de naturaleza civil. *Pol Sella v. Lugo Christian*, 107 D.P.R. 540, 546–547 (1978).

Existen claras diferencias conceptuales y en su sustrato entre ambos trámites. *La paternidad, y su adjudicación, es condición sine qua non para poder configurarse el delito por incumplimiento de la obligación alimentaria. La paternidad es una; no es susceptible de fragmentarse ni de medirse en grados.* La adjudicación de paternidad, más allá de duda razonable, es final, no pudiendo ser readjudicada en un procedimiento civil. *Poll Sella v. Lugo Christian*, supra, pág. 548.

El pago de daños al amparo de la citada Sec. 16-102A, requiere la adjudicación de responsabilidad penal de negligencia y su inmediata readjudicación en lo civil. Es imperativo reexaminar los hechos y la gravedad de la acción u omisión negligentes.

La presentación y el examen de la defensa de negligencia comparada en esa etapa posterior reabre la controversia sobre la negligencia durante un mismo proceso y ante un mismo juzgador.

Por razón de su cargo, el Fiscal representa los intereses del Pueblo de Puerto Rico; sin embargo, ahora deberá ampliar sus funciones y asumir vigorosamente la representación de la víctima del accidente ante las imputaciones de negligencia del conductor convicto.

## V

*Nuestra Constitución permite a la Asamblea Legislativa crear enfoques novedosos para fomentar la economía procesal en los tribunales del país, pero con sujeción a ciertos parámetros. Una limitación similar tiene este Tribunal; al decidir no podemos legislar.*

Los señalamientos e interrogantes que anteceden, sitúan la referida Sec. 16–102A en el *umbral de lo inconstitucional*. Se trata de una interpretación textual mayoritaria, forzada, basada en la visión[7] de que el juez está maniatado por un *mandato* legislativo inflexible y férreo: "*deberá* fijar una cantidad razonable para el pago de daños". Pasa por alto que hace tiempo superamos la mística de las palabras y al presente damos mayor peso a la *sustancia* sobre la *forma*. "Al interpretar estatutos en ocasiones hemos decidido que los términos como 'deberá' pueden leerse como 'podrá', haciendo así directivo lo que aparentemente es mandatorio; pero siempre se ha hecho para conformar el lenguaje del estatuto con el propósito legislativo." *Srio. de Justicia v. Tribunal Superior*, 95 D.P.R. 158, 161 (1967). Y viceversa, "[b]ajo conocidas normas de hermenéutica, términos permisibles en un estatuto como 'podrá' a veces cabe interpretarlos mandatoriamente, pero de ordinario ello es así cuando el fin o propósito principal del estatuto es que se haga aquello que permite". *Es-*

---

[7] Esta visión se aleja de la realidad de que muchos accidentes automovilísticos, por leves que sean, generan alguna forma de daño físico o angustias y sufrimientos. ¿Cuáles son esos casos sencillos? ¿Qué criterios utilizará el juzgador? ¿Será la cuantía? ¿El número de testigos?

*pasas Dairy, Inc. v. J.S.M.*, 94 D.P.R. 816, 826 (1967), reconsiderado en 96 D.P.R. 816 (1969).

En nada abona la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, Ley Núm. 253 de 27 de diciembre de 1995, según enmendada, 26 L.P.R.A. sec. 8001. Resulta *prematuro e improcedente* hablar sobre ella en el recurso de autos, ya que *dicho estatuto entró en vigor con posterioridad a la fecha del accidente que nos ocupa y es inaplicable.*

El verdadero propósito legislativo queda mal servido con la interpretación que impone al juzgador la obligación de *readjudicar los hechos y dirimir siempre negligencia comparada.* La idea central que late en la citada Sec. 16–102A es que la fijación de daños procede, *discrecionalmente,* sólo en aquellos casos en que el juzgador, al declarar inicialmente culpable al denunciado, *en conciencia, sin tener que reevaluar los hechos, está íntimamente convencido de que no medió negligencia comparada del perjudicado.*

*Si bien del hecho nace el derecho ("ex facto oritur ius"), de la justicia y sabiduría de nuestras opiniones, sentencias, dictámenes y resoluciones judiciales depende, en última instancia, la fe ciudadana en la justicia.*

Confirmaríamos.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Fuster Berlingeri.

No cabe duda de que la Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1872a, claramente dispone que el tribunal que imponga una pena a un infractor de esa disposición, viene obligado a dictar sentencia en la cual le fije también al infractor la cantidad que debe pagar a la parte perjudicada, en compensación por los daños que aquél le hubiere causado a la propiedad de ésta.

Se trata de una medida de carácter *mixto* penal y civil. *Pueblo v. Zayas Colón*, 139 D.P.R. 119 (1995).

Ahora bien, la disposición en cuestión es claramente de *alcance limitado*. La propia Sec. 16–102A expresamente circunscribe el pago referido sólo: (1) a aquellos casos en que el infractor no tenga "un seguro de responsabilidad pública que cubra los daños causados por él", y (2) a la reparación de daños *a la propiedad*. "El pago de daños que autoriza esta sección no incluye daños a la persona y los sufrimientos y angustias mentales." 9 L.P.R.A. sec. 1872a.

Es evidente del texto de la Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico que el legislador tuvo la intención de sustituir esta medida por la acción civil ordinaria de daños y perjuicios en casos de accidentes automovilísticos *solamente para casos sencillos*, en los cuales el único asunto civil es el relativo a *la reparación de los daños a la propiedad*, el cual puede adjudicarse expeditamente, sin complicaciones litigiosas.

De ordinario, se trata de situaciones en las cuales el vehículo del perjudicado ha sido impactado, y la única cuestión ante el foro de instancia es la determinación del monto de los daños al vehículo. En tales casos, con la mera presentación de prueba sobre gastos de reparación o pérdida, se puede resolver la reclamación de daños en cuestión. Se le provee así a la parte perjudicada del accidente automovilístico un remedio eficaz, que permite terminar pronta y económicamente el asunto, a la vez que se le evita al sistema judicial la carga de pleitos separados con respecto al mismo accidente. Sólo la presencia de tales circunstancias justifica apartarse excepcionalmente del antiguo y fundamental principio de nuestro ordenamiento jurídico, de que "la acción penal y la acción civil evenientes de un delito son completamente independientes y nunca pueden ejercitarse conjuntamente". *Guzmán v. Vidal*, 19 D.P.R. 841, 846 (1913). Véanse: *Díaz v. San Juan L. & T. Co.*, 17 D.P.R. 69 (1911); *Zalduondo v. Sánchez*, 15 D.P.R.

231 (1909). Véase, además, *Lorenzo v. Lorenzo*, 49 D.P.R. 318 (1935); *Muriel v. Suazo*, 72 D.P.R. 370 (1951).

Es por lo anterior que la consideración de la defensa de negligencia comparada en el procedimiento que nos concierne aquí, procede únicamente en aquellos casos en los cuales se prevé que la parte perjudicada no traerá una acción civil separada de daños y perjuicios en relación con los hechos adjudicados antes en el proceso penal. En tales casos —en los cuales la única acción judicial que se llevará a cabo, para dilucidar el daño a la propiedad y la responsabilidad del infractor, es la preceptuada en la Ley de Vehículos y Tránsito de Puerto Rico— sería evidentemente injusto e inconveniente que el infractor que tiene una defensa de negligencia comparada, no pueda oponerla a la reclamación de daños a la propiedad de la parte perjudicada en el accidente. Si el infractor no puede presentar dicha defensa en el procedimiento provisto por la referida Sec. 16–102A, se vería obligado a renunciar a su derecho, o en la alternativa, a presentar la defensa de negligencia comparada por su cuenta en una acción civil separada, incoada sólo para ello, lo que sería altamente dispendioso, y derrotaría precisamente los propósitos de economía procesal de la Sec. 16–102A, *supra.*

Pero, si es evidente que el perjudicado en el accidente oportunamente ha reclamado o *habrá de reclamar indemnización por daños personales o sufrimientos y angustias mentales, en una acción civil separada,* entonces *no existen las razones que justifiquen el procedimiento excepcional de la referida Sec. 16-102A, y la defensa de negligencia comparada que tenga el infractor debe presentarse siempre en la acción separada,* en la cual habrá de dilucidarse integralmente la cuestión de la responsabilidad civil del infractor. Si la situación es tal que no va haber economía judicial, ni economía para las partes, si de cualquier modo va a ser necesario presentar una acción civil ordinaria con respecto a los daños principales ocasionados por el acci-

dente, entonces en esa acción civil ordinaria deben dilucidarse *todos los asuntos pertinentes*, incluyendo la defensa de negligencia comparada. En esa acción se dilucidarían tanto los daños a la propiedad como los otros daños reclamados por la parte perjudicada. No tiene sentido jurídico alguno, y puede dar lugar a confusión, a duplicación de esfuerzos procesales y testimonios, y otras complicaciones innecesarias, escindir la causa de acción civil, para adjudicar primero, en el procedimiento de la Sec. 16–102A, *supra*, los daños a la propiedad y la negligencia comparada y, adjudicar luego, en otro foro judicial, en una acción civil separada, los daños personales y los sufrimientos y las angustias mentales.

En resumen, pues, me parece claro que el procedimiento especial para el pago de daños a la propiedad de la Sec. 16–102A aludida, sólo existe para casos en los que la parte perjudicada en el incidente delictivo ha sufrido *únicamente daños a la propiedad* y, por lo tanto, no habrán otras acciones civiles relativas a dicho incidente. *Sólo en tales casos* es justo y eficaz que se le permita al infractor presentar la defensa de negligencia comparada en dicho procedimiento.

En el caso ante nos, la parte perjudicada sufrió *daños personales*, cuya vindicación no puede realizarse dentro del procedimiento especial dispuesto por la Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico. Tanto la perjudicada como la niña que la acompañaba sufrieron traumas en diferentes partes del cuerpo, y ésta sufrió una herida en la frente y posible trauma en el cráneo. *Es evidente que el caso de autos requiere una acción civil ordinaria para dilucidar adecuadamente la responsabilidad torticera del infractor en el accidente automovilístico.* No se trata, pues, del caso sencillo que es adjudicable en su totalidad mediante el referido procedimiento especial de la Ley de Vehículos y Tránsito de Puerto Rico. En vista de lo anterior, la defensa de negligencia comparada, al igual que lo relativo a todos los daños sufridos por las partes, inclu-

yendo los daños a la propiedad, *deben considerarse todos en el pleito civil ordinario. No procede la consideración de la defensa aludida en la acción pendiente que se originó al amparo de la Ley de Vehículos y Tránsito de Puerto Rico.*

Por lo anterior, concurro con la sentencia que hemos emitido en el caso de autos.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López, a la cual se une el Juez Asociado Señor Hernández Denton.

No hay duda de que el legislador, al aprobar la Sec. 16–102A de la Ley Núm. 9 de 27 de marzo de 1987 (9 L.P.R.A. sec. 1872a), estuvo inspirado por un propósito o fin loable, cual fue el de proporcionar al ciudadano de nuestro país que sufre un daño económico, a consecuencia de un accidente automovilístico, un método rápido para reparar el mismo.

Del historial legislativo de dicha disposición estatutaria se desprende que el legislador, al así actuar, *estaba "pensando" en ese accidente menor*, catalogado corrientemente como "de *bumper* con *bumper*"; accidente en el cual los daños sufridos o la suma de dinero involucrada no justifican, de ordinario, la contratación de un abogado por el perjudicado en el accidente y la radicación de un pleito independiente de daños y perjuicios. Ello por razón de que los honorarios a pagarle al abogado por tramitar el pleito serían iguales que, o mayores a, la suma de dinero a reclamarse y obtenerse por el perjudicado.

Al aprobar la medida, sin embargo, el legislador *no* limitó la suma a reclamarse a la cantidad de quinientos dólares ($500), cual era la suma de dinero "límite" que tuvo en mente la Asamblea Legislativa en un momento deter-

minado del debate legislativo.(¹) Ello tiene la consecuencia de que, conforme a la letra de la ley hoy vigente, *la suma de dinero que el magistrado puede imponer en esa clase de situaciones es ilimitada*; esto es, podríamos estar hablando de la concesión, "de manera sumaria", de miles de dólares al amparo de las disposiciones de esta sección de ley.

*No obstante todo lo antes expresado, e independientemente del hecho de que la citada sección de ley tenga o no un límite monetario, somos del criterio que la mencionada sección 16–102A trasciende el umbral de lo inconstitucional.* Ello en vista del sencillo hecho *de que la aplicación de la misma plantea una violación a la cláusula constitucional sobre el debido proceso de ley en su vertiente procesal*, ya que se estaría privando al acusado de su propiedad sin el debido proceso de ley.(²) *Esto es, al Estado proveerle un mecanismo sumario para que la parte perjudicada sea compensada por los daños que le ha causado el acusado, se establece una intervención estatal ("state action") que justifica la aplicación de la cláusula del debido proceso de ley.* Véanse: *Connecticut v. Doehr*, 501 U.S. 1 (1991); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881 (1993); *Pueblo v. Rosario Igartúa*, 129 D.P.R. 1055 (1992). *Sólo por esta razón es que, necesariamente, hay que someter la citada ley a un análisis constitucional.*

La Sec. 7 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico garantiza a la ciudadanía de nuestro país que "[n]inguna persona será privada de su propiedad sin un debido proceso de ley". L.P.R.A., Tomo 1, ed. 1999, pág. 280. Esta disposición tiene su origen en las Enmiendas V y XIV de la Constitución de Estados Unidos. Según se ha conceptualizado, el debido proceso de ley se

---

(¹) Véase: P. del S. 383 y 662; proyectos de ley originales que fueron "sustituidos" por la Ley Núm. 9 de 27 de marzo de 1987 (9 L.P.R.A. sec. 1872a).

(²) Sabido es que, aun cuando una ley de su faz pueda ser constitucional, la misma puede resultar inconstitucional en su aplicación. *Rodríguez v. Depto. Servicios Sociales*, 132 D.P.R. 617 (1993); *Torres v. Castillo Alicea*, 111 D.P.R. 792, 800 (1981).

manifiesta en dos dimensiones distintas: la sustantiva y la procesal. *Rodríguez Rodríguez v. E.L.A.*, 130 D.P.R. 562 (1992), citando a *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1984); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, ante.

La *vertiente sustantiva* del debido proceso de ley, tanto en Puerto Rico como en Estados Unidos, persigue proteger y salvaguardar los derechos fundamentales de toda persona. *Es por esta razón que el Estado, al aprobar leyes o mediante sus actuaciones, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de libertad o propiedad de sus ciudadanos.* Véase *Rodríguez Rodríguez v. E.L.A.*, ante.

En su *vertiente procesal*, el debido proceso de ley *impone al Estado* la obligación de garantizar que, *cuando intervenga con los intereses de libertad y propiedad del individuo*, lo haga "a través de un procedimiento que, en esencia, sea justo y equitativo, que respete la dignidad de los individuos afectados". *Rodríguez Rodríguez v. E.L.A.*, ante, pág. 578. Véanse, además: *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, ante, págs. 887-888; *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 231 (1987).

Este Tribunal, siguiendo la casuística del Tribunal Supremo federal, ha dicho en innumerables ocasiones que "[p]ara que entre en vigor la protección que ofrece este derecho en su vertiente procesal, tiene que estar en juego un interés individual de libertad o propiedad. Una vez cumplida esta exigencia hay que determinar cuál es el procedimiento exigido (*what process is due*). Dependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental sea justo e imparcial". (Citas omitidas.) *Rodríguez Rodríguez v. E.L.A.*, ante, pág. 578. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, ante.

En el normativo caso de *Mathews v. Eldridge*, 424 U.S. 319 (1976), el Tribunal Supremo de Estados Unidos estableció un análisis, *consistente de tres (3) partes*, para determinar cuál es el proceso que se ha de seguir para poder privar a una persona de algún derecho de propiedad o libertad. Bajo la *primera parte* del análisis tenemos que determinar cuáles, si alguno, son los intereses individuales, propietarios o de libertad, afectados mediante la acción oficial. Como *segundo paso*, hay que *sopesar* el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el costo eventual (*probable value*) de ofrecer garantías adicionales o distintas *vis-à-vis*, el *tercer criterio* en el análisis, que es el interés gubernamental que se intenta proteger mediante la acción sumaria y la posibilidad de usar métodos alternos.

Un análisis somero de los criterios de *Mathews v. Eldridge*, ante, aplicados a la situación ante nos, *demuestra que el Estado, al establecer dicho procedimiento, está privando al acusado del derecho propietario que le asiste sobre su dinero.* En este caso hay un alto riesgo de una determinación errónea, *ya que el acusado no tiene las herramientas para poder prepararse adecuadamente, ni tiene el juzgador de los hechos todos los elementos de juicio para formar una decisión justa y equitativa;* también aumentarían los costos administrativos al proveerle las herramientas para defenderse porque se convertiría la vista en un minijuicio. Sopesando este criterio con el interés gubernamental en la economía procesal, somos de la opinión de que el método escogido por el legislador *incide excesivamente* con los derechos propietarios y constitucionalmente garantizados del individuo.

A la luz de este análisis, tenemos que determinar cuáles garantías procesales se deben conceder al individuo para proveerle un debido proceso de ley. La jurisprudencia post

*Mathews v. Eldridge,* ante, ha establecido diversos requisitos que se deben seguir en todo procedimiento adversativo, de manera que se cumpla con el debido proceso de ley, éstos son: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y a examinar evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en evidencia que conste en el récord. *Rodríguez Rivera & Co. v. Lee Stowell, etc.,* ante, pág. 889, citando a 2 *Rotunda, Nowak y Young, Treatise of Constitutional Law: Substance and Procedure* Sec. 17.8 (1986).

"*El requisito fundamental del debido proceso de ley es la oportunidad de ser oído en una etapa y de un modo, significativo.*" (Traducción y énfasis suplidos.) *Mathews v. Eldridge,* ante, pág. 333,(³) citando a *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965).

Nuestro disenso radica, precisamente, en la *inobservancia* de este requisito fundamental. *No* compartimos la noción, como algunos miembros de este Tribunal *sub silentio* proponen, que al concederle al acusado, ahora "demandado", la oportunidad de presentar prueba sobre negligencia comparada se le está proveyendo el derecho a ser oído que requiere el debido proceso de ley. *Esta concesión no es suficiente para que se pueda decir que el acusado ha tenido un proceso justo y equitativo.* El procedimiento provisto es sólo parte del debido proceso de ley. El derecho a ser oído incluye, además, el derecho a presentar evidencia, a contrainterrogar testigos, a argumentar y a poder refutar la evidencia contraria; *ello de manera informada.*

Resumiendo, *al Estado proveer un mecanismo para que la parte perjudicada sea compensada por los daños que le ha causado el acusado, se establece una intervención estatal que exige que se cumplan con las garantías del debido*

---

(³) Texto original: "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976).

*proceso de ley.* Encarnada la acción estatal a través del proceso híbrido [criminal/civil], es necesario proveer al acusado *el derecho a ser oído en una etapa, y en un modo, significativo,* tal y como lo requiere tanto la Constitución de Estados Unidos como la del Estado Libre Asociado de Puerto Rico. *En la medida en que el estatuto no provee estos derechos, el mismo violenta ambas constituciones.*

En la medida en que la ley que nos ocupa —Sec. 16–102A, ante— no otorga al acusado las herramientas necesarias para defenderse adecuadamente, *le está negando un proceso justo y equitativo,* requisito indispensable para poder privarlo de su propiedad, violando, por tanto, el debido proceso de ley en su vertiente procesal. *Dicho de otra manera, el Estado, al formar parte de este proceso híbrido [criminal/civil], está avalando o permitiendo que ocurra una "incautación de propiedad" sin que se hayan observado los requisitos del debido proceso de ley.*

*No* podemos suscribir esa posición. Somos del criterio que dicha sección de ley *es inconstitucional en su aplicación.* Esa inconstitucionalidad *no* se esfuma mediante la concesión de derechos, o remedios, *a medias* por el Tribunal. Es por ello que entendemos que cualquier procedimiento celebrado en el presente caso al amparo de dicha disposición estatutaria, y cualquier determinación que se realice bajo la misma, es nula e inoperante. Revocaríamos, en consecuencia, cualquier determinación que al respecto haya tomado el tribunal de instancia a la luz de la mencionada legislación.[4]

---

[4] La parte perjudicada por la negligencia de la parte recurrente *no* queda desprovista de remedio; está a su alcance acudir a la vía civil ordinaria.

— O —

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón, a la cual se une el Juez Presidente Señor Andréu García.

I

El 3 de noviembre de 1994, a las 6:50 A.M., tuvo lugar un aparatoso accidente automovilístico en la carretera Núm. 176, camino Luciano Vázquez de Cupey, Área de San Juan.([1]) Estuvieron involucrados: un Honda de 1988, con tablilla Núm. BKM 562, propiedad de la conductora Florimar Agostini Rodríguez, y un Honda de 1982, tablilla Núm. 40 A 189, propiedad de la conductora Xiomara Rodríguez Aguilú. Ninguno de los vehículos estaba asegurado al momento del accidente. El policía Ángel Vázquez García preparó el correspondiente informe como resultado de la investigación que realizó. Expresó que los daños no habían sido estimados y que resultaron lesionadas las tres (3) personas siguientes: la conductora Xiomara Rodríguez Aguilú, la pasajera Xaymara Hernández Rodríguez, quien acompañaba a la primera, y la conductora Florimar Agostini Rodríguez, quienes fueron trasladadas al Hospital San Gerardo, donde recibieron atención médica. El doctor que las atendió diagnosticó a Xiomara Rodríguez Aguilú varios traumas en diferentes partes del cuerpo; a la niña Xaymara Hernández Rodríguez herida en la frente y posible trauma en el cráneo, y a Florimar Agostini Rodríguez traumas en el pecho y en el brazo izquierdo.([2])

---

([1]) Esto se puede apreciar de las fotografías estipuladas por la defensa que aparecen en los autos originales del tribunal de instancia.

([2]) Los datos proporcionados surgen del Informe de Accidente de Tránsito, Informe Núm. 1869, preparado por el policía Ángel Vázquez García el 3 de noviembre de 1994. Al referido informe se le asignó el número de querella 94–1–262–06136 (*Exhibit* 14, Defensa).

Con fecha de 10 de diciembre de 1994 y ante el entonces Tribunal de Distrito de San Juan, el Pueblo de Puerto Rico formuló la Denuncia Núm. 94–0012-00569 contra Florimar Agostini Rodríguez por el delito menos grave de imprudencia o negligencia temeraria, al amparo de la Sec. 5–201 de la Ley Núm. 141 de 20 de julio de 1960 (conocida como la Ley de Vehículos y Tránsito de Puerto Rico), según enmendada, 9 L.P.R.A. sec. 871.([3]) Se le imputó conducir su vehículo de motor con voluntario y malicioso desprecio por la seguridad de vidas y propiedades, invadiendo el carril contrario y ocasionando de esta manera el accidente. El mismo 10 de diciembre quedó señalado el juicio para el 28 de diciembre de 1994 a las 8:30 A.M., citándose en corte abierta a la imputada y a los testigos Xiomara Rodríguez Aguilú y Ángel Vázquez García. A solicitud de la representación legal de la imputada, el 20 de diciembre de 1994 se reseñaló la vista para el 1ro de febrero de 1995.

Así las cosas, llegado el día, tras haberse leído la denuncia y haber mediado una alegación de no culpable, procedió el foro de instancia con la vista en el Caso Criminal Núm. T94–6643. Surge de la Minuta de 1ro de febrero de 1995 que la prueba documental estipulada por el Ministerio Público consistió en ocho (8) fotografías que reflejan los daños a la parte delantera del vehículo de la perjudicada Rodríguez Aguilú (*Exhibit* 1 al 8, Ministerio Público), mientras que la prueba documental estipulada por la defensa consistió en trece (13) fotografías que reflejan los daños al vehí-

---

([3]) Prescribe la Sec. 5–201 de la Ley de Vehículos y Tránsito de Puerto Rico, según enmendada, 9 L.P.R.A. sec. 871, que:

"(a) Toda persona que condujere un vehículo con voluntario o malicioso desprecio por la seguridad de personas o propiedades será culpable de conducir temerariamente e incurrirá en delito menos grave y convicta que fuere se le castigará con una multa no menor de cien (100) dólares ni mayor de quinientos (500) dólares o cárcel por un término no menor de un mes ni mayor de seis (6) meses, o ambas penas a discreción del Tribunal.

"(b) En caso de una segunda convicción bajo las disposiciones de esta sección, el Secretario [del Departamento de Transportación y Obras Públicas] revocará a la persona así convicta toda licencia que posea autorizándole a conducir vehículos de motor por un término de tres (3) meses y por cada convicción subsiguiente la revocación será por un término de seis (6) meses."

culo de la imputada y el lugar donde ocurrieron los hechos (*Exhibit* 1 al 13, Defensa), así como el Informe de Denuncia de la Policía de Puerto Rico (*Exhibit* 14, Defensa).([4]) El Ministerio Público presentó los testimonios de Xiomara Rodríguez Aguilú y Ángel Vázquez García, quienes estuvieron sujetos al contrainterrogatorio de la defensa. Por su parte, la defensa presentó el testimonio de la imputada, quien a su vez fue contrainterrogada por el Ministerio Público.

Vista la prueba presentada, el tribunal dictó una sentencia en la que declaró a Florimar Agostini Rodríguez culpable de delito menos grave, según dispone la Sec. 5–304 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 895,([5]) por conversión de la falta administrativa con-

---

([4]) Aunque de la denuncia surge que los daños no fueron estimados, las fotografías estipuladas por la defensa y el Ministerio Público ilustran claramente que hubo cuantiosos daños a la propiedad vehicular.

([5]) La Sec. 5–304 de la Ley de Vehículos y Tránsito de Puerto Rico, según enmendada, 9 L.P.R.A. sec. 895, dispone lo siguiente:

"(a) Todo vehículo que transite por vías públicas cuyas zonas de rodaje se hallen debidamente marcadas por carriles de tránsito se mantendrá dentro de uno de ellos y no cruzará al otro carril sin tomar las precauciones necesarias para evitar la colisión con otro vehículo o causar daño a personas o propiedades.

"(b) Siempre que una vía pública cuya zona de rodaje estuviere dividida en dos o más carriles para el tránsito en direcciones opuestas mediante el establecimiento de un espacio intermedio o de una isleta, todo vehículo deberá ser conducido solamente por los carriles a la derecha de dicho espacio o isleta, excepto cuando de otra forma se autorizare mediante señalamiento al efecto; y ningún vehículo deberá ser conducido por o sobre dicho espacio intermedio o isleta o cruzando los mismos, excepto en aquellos sitios en que hubiere una brecha en el espacio intermedio o isleta, o en el cruce de una intersección.

"(c) En una vía pública o sección de vía pública cuya zona de rodaje esté dividida en tres carriles para el tránsito en direcciones opuestas, el vehículo no será conducido por el carril central, excepto:

"(1) Para alcanzar y pasar a otro vehículo cuando tuviere visibilidad y espacio razonable.

"(2) Para doblar a la izquierda.

"(3) Cuando se autorizare por medio de señalamiento al efecto.

"(d) Se podrán instalar dispositivos oficiales para regular el tránsito disponiendo que el tránsito que discurra en cierta dirección utilice un carril específico o para designar aquellos carriles que deberán usar los vehículos que discurran en una dirección específica, independientemente del centro de la zona de rodaje y los conductores obedecerán las indicaciones de cada uno de dichos dispositivos.

"(e) Podrán instalarse dispositivos oficiales para regular el tránsito prohibiendo el cambiar de carriles en ciertas secciones de una zona de rodaje y todo conductor de vehículo obedecerá las indicaciones de cada uno de dichos dispositivos."

sistente en la invasión de un carril contrario, según la Sec. 16–102 de la Ley de Vehículos y Tránsito de Puerto Rico, según enmendada, 9 L.P.R.A. sec. 1872. Condenó a ésta al pago de setenta y cinco dólares ($75) de multa más costas, o a cumplir un día de cárcel por cada cinco dólares ($5) que dejare de pagar. Una vez dictada la sentencia de culpabilidad se señaló una vista de daños para el 17 de marzo de 1995 a las 8:30 A.M. Tanto Agostini Rodríguez como la perjudicada Rodríguez Aguilú fueron citadas en corte abierta. Además, el tribunal advirtió a la perjudicada que debía comparecer a la vista con la prueba que aportaría para establecer los daños.

El 6 de febrero de 1995, la representación legal de Agostini Rodríguez solicitó al foro de instancia, mediante una moción por escrito, que efectuara una determinación adicional sobre negligencia comparada. Argumentó que esa determinación serviría para que el foro ordenara en su día el correspondiente pago de daños, deduciendo del total de daños ocasionados a la propiedad los daños proporcionales al grado de negligencia incurrido por la perjudicada Rodríguez Aguilú. También solicitó ese día, mediante otra moción por escrito, que se le permitiera cursar un interrogatorio a la perjudicada Rodríguez Aguilú con respecto a los daños sufridos por su vehículo y la manera en que ocurrió el accidente. Expuso que la naturaleza civil de la vista por daños le confiere derecho a utilizar los mecanismos provistos por las Reglas de Procedimiento Civil en cuanto al descubrimiento de prueba. Vistas las mociones presentadas, el 21 de febrero de 1995, el tribunal de instancia declaró la primera sin lugar, disponiendo que la vista se celebraría únicamente a los efectos de determinar daños con respecto a la parte perjudicada; y declaró la segunda con lugar, permitiendo únicamente el interrogatorio en cuanto a los daños sufridos por la perjudicada y la prueba sobre ellos.

Inconforme con la orden del tribunal, negándose a efectuar una determinación sobre negligencia comparada,

Agostini Rodríguez acudió al Tribunal de Circuito de Apelaciones (en adelante el Tribunal de Circuito) mediante petición de *certiorari* de 16 de marzo de 1995. Los señalamientos de error se circunscribieron a cuestiones constitucionales, específicamente que: (1) la Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1872a, resulta inconstitucional en su aplicación, porque crea una clasificación discriminatoria y sospechosa al distinguir entre diversas reclamaciones de daños en los ámbitos civil y criminal; (2) la Sec. 16–102A, *supra*, resulta inconstitucional de su faz, porque crea una clasificación sospechosa por razón de estatus, origen, condición social o económica, al distinguir entre personas aseguradas y no aseguradas, y (3) dicha sección resulta inconstitucional por contravenir el principio de igual protección de las leyes, al crear un mecanismo judicial incompleto, inequitativo e injusto para la reclamación por daños materiales en comparación con el mecanismo civil ordinario. En síntesis, solicitó que se declarase la inconstitucionalidad de la Sec. 16–102A, *supra*, o que se le permitiese levantar la defensa de negligencia comparada en la vista de daños.

La expedición del recurso de *certiorari* fue denegada mediante Resolución de 12 de junio de 1995, notificada el 22 de junio de ese año. El Tribunal de Circuito de Apelaciones fundamentó su decisión en la validez de las clasificaciones socioeconómicas creadas por la Sec. 16–102A, *supra*, a la luz del escrutinio correspondiente, en este caso el escrutinio racional; en que el pago de daños constituye una compensación de naturaleza civil, y finalmente, en que pese a la naturaleza civil de la vista de daños, es improcedente la defensa sobre negligencia comparada para efectos de imponer daños conforme al criterio de "cantidad razonable", ya que la sección impugnada salvaguarda el derecho de las partes a presentar sus defensas en un procedimiento civil ordinario.

Por su inconformidad con la determinación del foro apelativo, Agostini Rodríguez acudió ante nos mediante petición de *certiorari* de 14 de julio de 1995.([6]) Reiteró su solicitud de remedio para que declaremos la inconstitucionalidad de la Sec. 16–102A, *supra,* o que le permitamos levantar la defensa de negligencia comparada

---

([6]) A dicha petición le incorporó los mismos señalamientos de error que formaron parte del recurso ante el Tribunal de Circuito. Se detallan como sigue:

*"PRIMER ERROR*

"ERRÓ EL HONORABLE TRIBUNAL DE CIRCUITO DE APELACIONES, CIRCUITO REGIONAL DE SAN JUAN, AL CONFIRMAR UNA RESOLUCIÓN DE LA HONORABLE JUEZA KATHERINE SILVESTRI QUE RESUELVE QUE LA APLICACIÓN QUE EL TRIBUNAL IMPARTIERA A LA LEY DE RESTITUCIÓN (LEY # 9 DEL 27 DE MARZO DE 1987, 9 L.P.R.A. SEC. 1872(a)) NO RESULTA INCONSTITUCIONAL EN SU APLICACIÓN AL CREAR UNA CLASIFICACIÓN DISCRIMINATORIA Y SOSPECHOSA ENTRE RECLAMACIONES DE DAÑOS DE NATURALEZA CIVIL Y RECLAMACIONES DE DAÑOS DE NATURALEZA CRIMINAL, ASÍ COMO RECLAMACIONES DE DAÑOS MATERIALES VIS A VIS RECLAMACIONES DE DAÑOS FÍSICOS MORALES Y MENTALES.

*"SEGUNDO ERROR*

"ERRÓ EL HONORABLE TRIBUNAL DE CIRCUITO DE APELACIONES, CIRCUITO REGIONAL DE SAN JUAN, AL CONFIRMAR UNA RESOLUCIÓN DE LA HONORABLE JUEZA, KATHERINE SILVESTRI, QUE NO RESOLVIÓ QUE LA LEY DE RESTITUCIÓN, CONTENIDA EN LA LEY DE VEHÍCULOS Y TRÁNSITO, ANTES CITADA ES UNA INCONSTITUCIONAL DE SU FAZ AL CREAR UN DISCRIMEN POR RAZÓN DE STATUS, ORIGEN O CONDICIÓN SOCIAL O ECONÓMICA, EN EL TRATO DE LAS PERSONAS ENVUELTAS EN UN ACCIDENTE DE AUTOMÓVIL, AL DISTINGUIR ENTRE PERSONAS ASEGURADAS Y NO ASEGURADAS.

*"TERCER ERROR*

"ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES, CIRCUITO REGIONAL DE SAN JUAN, AL CONFIRMAR UNA RESOLUCIÓN DE LA HONORABLE JUEZA, KATHERINE SILVESTRI QUE RESOLVE [SIC] QUE LA LEY DE RESTITUCION CONTENIDA EN LA LEY DE VEHICULOS Y TRÁNSITO, ANTES CITADA VIOLA EL PRINCIPIO DE LA IGUAL PROTECCION DE LAS LEYES AL CREAR UN MECANISMO JUDICIAL INCOMPLETO, INEQUITATIVO E INJUSTO PARA LAS RECLAMACIONES DE DAÑOS MATERIALES, SI SE COMPARA CON EL MECANISMO PROVISTO POR LAS REGLAS DE PROCEDIMIENTO CIVIL DE 1979, PARA LAS RECLAMACIONES EFECTUADAS VIA LA LITIGACIÓN CIVIL, PARA ESOS Y OTROS DAÑOS."

en la vista de daños. Decidimos revisar y expedimos el auto de *certiorari* solicitado.

## II

El Código Civil de Puerto Rico establece ciertos principios que son rectores cuando los tribunales tienen que ejercer su función adjudicadora. Entre éstos se encuentran las normas de interpretación de las leyes. Así, dispone el Código Civil que cuando la ley es clara y libre de toda ambigüedad, se debe observar su letra. Art. 14 del Código Civil, 31 L.P.R.A. sec. 14. Por otro lado, cuando las expresiones de una ley son dudosas, la mejor forma de interpretación es buscar su razón y espíritu, o las causas y motivos que indujeron a la Asamblea Legislativa a aprobarla. Art. 19 del Código Civil, 31 L.P.R.A. sec. 19.

Por esto, al interpretar una ley, los tribunales deben considerar cuál fue el propósito o la intención de la Asamblea Legislativa para aprobarla, para que así se cumpla con el resultado querido por el legislador. *Piñero v. A.A.A.*, 146 D.P.R. 890 (1998); *García v. E.L.A.*, 146 D.P.R. 725 (1998). Asimismo, la interpretación de los diferentes artículos o secciones de una ley y las leyes que se relacionen entre sí por su objetivo o propósito, debe hacerse en conjunto, refiriéndose las unas con las otras, como un todo, buscando la intención legislativa. *Ojeda v. El Vocero de P.R.*, 137 D.P.R. 315 (1994). Además, véase *García v. E.L.A.*, supra.

También se debe tener en cuenta que para interpretar una ley, los tribunales pueden recurrir a ayudas o medios extrínsecos; es decir, datos, hechos, circunstancias y consideraciones que no surjan de la misma ley, para encontrar su propósito:

> In the interpretation of a statute, if a doubt or uncertainty as to the meaning of the legislature cannot be removed by a consideration of the act itself and its various parts, *recourse may*

> *be had to extraneous facts, circumstances, and means of expla-*
> *nation,* for the purpose of determining the legislative intent;
> but those only are admissible which are logically connected
> with the act in question, or authentic, or inherently entitled to
> respctful consideration. (Énfasis suplido.) H. Campbell Black,
> *Handbook on the Construction and Interpretation of the Laws,*
> London, Ed. Longman, Sec. 90, pág. 275.

Entre estas ayudas o medios extrínsecos de interpreta-
ción de los estatutos se encuentran tanto las leyes aproba-
das con anterioridad a la disposición que se está interpre-
tando como las que se han aprobado con posterioridad. J.
Evans, *Statutory Interpretation: Problems of Communica-
tions* 277 (1988); V. P. Sarathi, *The Interpretation of Statu-
tes,* 3ra ed., Lucknow, Ed. Longman, 1986, págs. 345–346.

De hecho, este Tribunal ha utilizado esta norma en múl-
tiples ocasiones, como por ejemplo, al intepretar leyes *in
pari materia.* A estos efectos, véanse: *Piñero v. A.A.A.,* su-
pra (en el cual se interpretó la Ley Núm. 2 de 17 de octubre
de 1961, según enmendada, 32 L.P.R.A. sec. 3118 *et seq.,*
utilizando, entre otras, la Ley Núm. 80 de 30 de mayo de
1976, según enmendada, 29 L.P.R.A. sec. 185a *et seq.*); *Vi-
llamil Suárez v. D.T.O.P.,* 133 D.P.R. 805 (1993) (en el que
se interpretó la Ley Núm. 447 de 15 de mayo de 1951 —3
L.P.R.A. sec. 761 *et seq.*— utilizando la Ley Núm. 78 de 25
de abril de 1949 y la Ley Núm. 26 de 22 de agosto de 1974);
*Asoc. Drs. Med. Cui. Salud v. Morales,* 132 D.P.R. 567
(1993) (en el cual se interpretó la Ley Núm. 80 de 26 de
junio de 1964 (20 L.P.R.A. sec. 531), utilizando la Ley Núm.
152 de 3 de junio de 1976 (20 L.P.R.A. sec. 2751)); *Zam-
brana Maldonado v. E.L.A.,* 129 D.P.R. 740 (1992) (en el
cual se interpretaron los Arts. 1868 y 1873 del Código Ci-
vil, 31 L.P.R.A. secs. 5298 y 5303, respectivamente, utili-
zando la Ley Núm. 104 de 29 de junio de 1955 (31 L.P.R.A.
sec. 5142 y 32 L.P.R.A. sec. 3077 *et seq.*)), conocida como
Ley de Reclamaciones y Demandas contra el Estado.

Con este marco doctrinal en mente, pasemos a analizar
las controversias ante nos.

## III

Mediante la Ley Núm. 9 de 27 de marzo de 1987, según enmendada, se incorporó la Sec. 16–102A a la Ley de Vehículos y Tránsito de Puerto Rico, *supra*. El historial legislativo de esta sección se originó en el P. del S. 389 de 26 de marzo de 1985 y el P. del S. 662 (21 de noviembre de 1985). Visto el contenido de esos proyectos, es preciso aclarar que originalmente se propuso una enmienda al Art. 49A del Código Penal, 33 L.P.R.A. sec. 3212. Claramente, estuvo ante la consideración de los cuerpos legislativos el que se le permitiese imponer la pena de restitución al convicto que hubiese causado daños a una persona o a la propiedad de ésta, como consecuencia de un accidente automovilístico por violaciones a la Ley de Vehículos y Tránsito de Puerto Rico. Figuraron en ambos proyectos una serie de criterios que el tribunal debía tomar en consideración al momento de fijar el importe de la pena de restitución que ha de ser satisfecho en dinero. Habrían de tomarse en cuenta: (1) el total de los daños que deben de restituirse, (2) la participación prorroteada del ofensor en cuestión, de haber sido varios los participantes en el acto delictivo, (3) la capacidad del ofensor para pagar y (4) cualquier otra circunstancia que permitiese una fijación adecuada. Claro está, en ningún caso el importe que sea fijado podría exceder los límites establecidos para la pena de multa. En el caso de delitos graves, la pena de restitución no podría exceder de cinco mil dólares ($5,000). En el caso de delitos menos graves, inicialmente se dispuso que la pena de restitución no podía exceder de mil dólares ($1,000), posponiéndose posteriormente que ella no podría exceder de quinientos dólares ($500). Los referidos proyectos fueron sustituidos por el Sustitutivo a los P. del S. 389 y 662 de 26 de marzo de 1986.

En el Sustitutivo a los P. del S. 389 y 662 se propuso la incorporación de una sección a la propia Ley de Vehículos y

Tránsito de Puerto Rico, a los efectos de hacer aplicable la pena de restitución únicamente a casos en los que se hubiere causado daños a la propiedad. El tribunal no impondría dicha pena si el convicto le demostrase poseer un seguro de responsabilidad pública cubriendo los daños ocasionados por él y que ya hubiesen sido compensados por la compañía aseguradora. Con relación a este proyecto y sobre el alcance de la medida, las Comisiones de los Jurídico y de Transportación y Obras Públicas prepararon el Informe Conjunto de 26 de marzo de 1986, en el cual recomendaron favorablemente su adopción. Desde entonces quedó expresamente consignado el propósito de ésta, consistente en atender "la preocupación de la comunidad puertorriqueña por la falta de un sistema para compensar a todo ciudadano que sufre pérdidas a su propiedad debido a la negligencia de parte de muchos conductores [sin seguro] que transitan sus vehículos en las carreteras de Puerto Rico", pues "no exist[ía] un mecanismo adecuado que permit[iese] al perjudicado recobrar en el término más inmediato compensación alguna por los daños sufridos, principalmente, a su vehículo". Informe conjunto de las Comisiones de lo Jurídico y de Transportación y Obras Públicas sobre el P. del S. 389 y 662 de 26 de marzo de 1986, 10ma Asamblea Legislativa, 2da Sesión Ordinaria, págs. 1–2.

Este proyecto estableció la cuantía de quinientos dólares ($500) como máximo importe de la pena de restitución en casos de delitos menos grave. Pendiente de aprobación ante el Senado, uno de sus miembros sugirió eliminar los quinientos dólares ($500) como importe máximo de la pena de restitución para sustituirlo por mil dólares ($1,000). A raíz de la sugerencia, se planteó la posible inconstitucionalidad de la medida en atención al hecho de que se estaría imponiendo una pena superior a los quinientos dólares ($500), sin proveerse para juicio por jurado. 32 *Diario de Sesiones* 2041–2043(1986). Por razón del planteamiento

constitucional relacionado con el Sustitutivo a los P. del S. 389 y 662, la Comisión de Conferencia intervino y preparó el Informe de Conferencia de 2 de marzo de 1987. Constaron en este informe varias enmiendas, quedando finalmente eliminadas las anteriores referencias a la pena de restitución y disponiéndose en su lugar que el tribunal debía fijar una cantidad razonable para el pago de daños. Así quedó aprobado el Sustitutivo a los P. del S. 389 y 662 (Conferencia), mediante la Ley Núm. 9, *supra.*

Posteriormente, en un intento por facilitar a la parte perjudicada el obtener la ejecución de una sentencia imponiendo el pago de daños causados a su propiedad, la Legislatura aprobó una enmienda a la Sec. 16–102A, *supra.* Esta se originó en el P. de la C. 401 de 15 de marzo de 1989, el cual fue recomendado favorablemente por las Comisiones de los Jurídico Civil y Jurídico Penal de la Cámara de Representantes, mediante Informe de 10 de octubre de 1989. Básicamente, expresaron que la enmienda tendría "el efecto de señalar la disponibilidad del mecanismo procesal de la ejecución de sentencia siguiendo el procedimiento ordinario que consigna la Regla 51 de Procedimiento Civil". Informe de lo Jurídico Civil y Jurídico Penal sobre el P. de la C. 401 de 10 de octubre de 1989, 11ma Asamblea Legislativa, 2da Sesión Ordinaria, pág. 3. Bajo este esquema se trataría la ejecución de una sentencia para autorizar el pago de daños y pérdidas a la propiedad, como una ejecución de sentencia en un pleito civil ordinario. Al favorecer su aprobación, dichas comisiones tomaron en consideración y evaluaron varias comparecencias escritas, incluyendo la del entonces Secretario del Departamento de Transportación y Obras Públicas. Su testimonio escrito de 22 de agosto de 1989 respaldó la adopción de la medida como recurso remediativo para agilizar el procedimiento, apuntando la deseabilidad de adoptar en un futuro un seguro de responsabilidad obligatorio para todo poseedor de un vehículo de motor.

Esta idea se convirtió en realidad el 27 de diciembre de 1995, cuando la Asamblea Legislativa aprobó la Ley Núm. 253 (26 L.P.R.A. sec. 8051 *et seq.*), conocida como la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, vigente desde el momento de su aprobación.[7] Sin embargo, este sistema de seguro de responsabilidad obligatorio comenzó a ser exigible a partir del 1ro de enero de 1998.

Es menester que nos expresemos brevemente sobre la Ley de Seguro de Responsabilidad Obligatorio, ya que utilizando únicamente la Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, no podemos resolver en derecho el caso ante nuestra consideración. Analizaremos, pues, dicha ley, ya que tiene una relación estrecha con el ordenamiento procesal vigente al momento de ocurrir los hechos del caso de autos.

## IV

Con el seguro de responsabilidad obligatorio se ofrece una cubierta por los daños a la propiedad vehicular únicamente hasta un máximo de tres mil dólares ($3,000). Así se evita la imposición de una carga onerosa al dueño del vehículo que de otro modo, y con probabilidad, confrontaría problemas para recibir con prontitud una compensación que, aunque pueda resultar mínima, la podrá recibir con mayor celeridad. Según esta ley, la compensación se concede bajo una determinación inicial de responsabilidad, que *"no coartará el derecho que asiste a los reclamantes de acudir a los tribunales* cuando el sistema [de] determinación inicial de responsabilidad así lo permita, o cuando cualquiera de las partes involucradas en una reclamación procure obtener compensación adicional a la satisfecha a

---

[7] Esta ley ha sido enmendada en tres (3) ocasiones posteriores, a saber: mediante la Ley Núm. 94 de 20 de agosto de 1997, la Ley Núm. 201 de 26 de diciembre de 1997 y la Ley Núm. 201 de 7 de agosto de 1998.

virtud de dicho sistema". (Énfasis suplido.) 26 L.P.R.A. sec. 8057(a).

Esta nueva legislación recoge la preocupación gubernamental de que toda persona que sufra un accidente en el que esté involucrado un vehículo de motor tenga una compensación inicial rápida. Además, ésta intenta llenar el vacío de un sistema de transportación pública poco efectivo. En específico, prescribe que incurrirá en delito menos grave quien maneje, opere, conduzca o permita el tránsito por las vías públicas de un vehículo de motor que no esté asegurado. En caso de que el conductor de un *vehículo no asegurado* ocasione daños a uno asegurado, el tribunal impondrá el pago de daños, al amparo de la Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico, *supra.* Art. 11(a) de la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, 26 L.P.R.A. sec. 8060(a).

Podemos mencionar algunas situaciones en las que un vehículo de motor podría no estar cubierto por el seguro de responsabilidad obligatorio, según mencionáramos en el párrafo anterior, lo que ocasionaría la aplicación de la Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico, *supra.* En primer lugar, tenemos la situación del dueño de un vehículo de motor que no ha renovado u obtenido por primera vez la licencia de su vehículo, ya sea por descuido o porque simplemente no le interese cumplir con la ley. Asimismo, podría ocurrir que los dueños de dos (2) o más vehículos de motor no estuvieran asegurados y se involucran en un accidente automovilístico donde sufran daños a la propiedad. En tal caso, la Sec. 16–102A, *supra*, sería de aplicación.

También podemos mencionar a las personas que la propia Ley de Vehículos y Tránsito de Puerto Rico excluye. Dicha ley dispone, en específico, que será deber de toda persona devolver al Secretario del Departamento de Transportación y Obras Públicas la licencia que le haya sido expedida cuando el vehículo de motor o arrastre para el cual

se expidió dicha licencia va a ser utilizado exclusiva y permanentemente en una finca privada. 9 L.P.R.A. sec. 486. Asimismo, dispone esta ley que los vehículos de motor que no tengan la correspondiente autorización del Secretario no podrán transitar por las vías públicas del país, excepto aquellos vehículos que se utilicen en fincas privadas con el propósito de trasladarlos de una propiedad privada a otra. 9 L.P.R.A. sec. 401. Como se puede apreciar, la Ley de Vehículos y Tránsito de Puerto Rico provee excepciones a la norma de que todos los vehículos deben contar con una autorización del Estado para poder transitar por las vías públicas. Esto ocurre cuando dichos vehículos se utilizan en fincas privadas exclusivamente, pero ellos mismos pueden tener un contacto incidental con las vías públicas del país al moverse de una finca privada a otra, lo que acarrea un posible riesgo de accidente. Estos vehículos, al no tener una licencia o autorización del Secretario de Transportación y Obras Públicas, no están cubiertos por las disposiciones de la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor. A estos efectos nótese que al Art. 4 de dicha ley, en sus incisos (a) y (e), 26 L.P.R.A. sec. 8053(a) y (e) respectivamente, relaciona el que se obtenga la correspondiente licencia del vehículo de motor con la obligación de pagar y obtener el seguro de responsabilidad obligatorio.[8]

Por último, cabe destacar que la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, al defi-

---

[8] El Art. 4 de la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor dispone lo siguiente:

"(a) Toda persona que obtenga por primera vez o renueve la licencia de un vehículo de motor requerida por las secs. 301 *et seq.* del Título 9, "Ley de Vehículos y Tránsito de Puerto Rico, vendrá obligada a pagar la prima correspondiente del seguro de responsabilidad obligatorio, junto con el pago al Secretario de Hacienda del importe de los derechos de la expedición o renovación de la referida licencia. ...

"(e) Cuando la licencia de un vehículo de motor se traspase a otra persona, el seguro de responsabilidad obligatorio que cubre a dicho vehículo se mantendrá vigente y pasará a cubrir la responsabilidad legal del nuevo dueño hasta la fecha de renovación de la licencia de dicho vehículo de motor." 26 L.P.R.A. sec. 8053(a) y (e), respectivamente.

nir lo que significa "seguro de responsabilidad obligatorio", dispone que dicho seguro "responde[rá] por los daños causados a vehículos de motor de terceros [asegurados] como resultado de un accidente de tránsito, *por los cuales es legalmente responsable el dueño del vehículo asegurado* por este seguro, y a causa de cuyo uso se ocasionan dichos daños". (Énfasis suplido.) 26 L.P.R.A. sec. 8052(j).

Por su parte, la Sec. 13–101 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1751, dispone lo siguiente:

El dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación de dicho vehículo, interviniendo culpa o negligencia, cuando el referido vehículo sea operado o esté bajo el control físico y real de cualquier persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona, obtenga su posesión mediante la autorización expresa o tácita del dueño. En todo caso se presumirá, salvo prueba en contrario, que la persona que opera o tiene bajo su dominio o control un vehículo de motor, ha obtenido su posesión con la autorización de su dueño, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona.

La persona por cuya negligencia haya de responder el dueño de un vehículo de acuerdo con las disposiciones del párrafo anterior vendrá obligada a indemnizar a éste.

Con respecto a esta sección hemos resuelto que, para imponerle responsabilidad al dueño de un vehículo de motor cuando dicho vehículo sea operado o esté bajo el dominio o control de un tercero, esta tercera persona debe haber obtenido la posesión del vehículo mediante autorización expresa o tácita del dueño. *McGee Quiñones v. Palmer*, 91 D.P.R. 464 (1964); *Cordero Santiago v. Lizardi Caballero*, 89 D.P.R. 150 (1963). Es decir, para que exista responsabilidad legal del dueño del vehículo de motor por los daños ocasionados por un tercero, es menester que dicho tercero haya tenido la autorización para conducirlo, ya sea tácita o expresa, del dueño del vehículo de motor. Si no media dicha autorización, el dueño del vehículo no respondería por

los daños causados, en cuyo caso, según establece la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, dicho seguro tampoco respondería.

Sin embargo, debemos destacar que mediante la Ley Núm. 201 de 7 de agosto de 1998,[9] se enmendaron los Arts. 4 y 11 de la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, *supra*. Con esto, el legislador intentó subsanar lo que estimó eran deficiencias de la ley. En específico, intentó corregir la laguna que existía cuando una persona que no es el dueño del vehículo de motor (y dicho vehículo no posee seguro) lo utiliza en las vías públicas de Puerto Rico. La enmienda estableció como delito menos grave el que un "conductor incidental" maneje un vehículo de motor que no tenga seguro por las vías públicas.[10]

Además, es preciso indicar que las enmiendas introducidas por la citada Ley Núm. 201 denotan que el legislador está consciente de que pueden ocurrir situaciones, no previstas en la ley, donde haya un accidente con vehículos de motor asegurados y no asegurados.[11] A estos efectos, véase el Art. 11(b), según enmendado por la Ley Núm. 201 de 7 de agosto de 1998, que dispone lo siguiente:[12]

---

[9] Esta ley entró en vigor inmediatamente de ser aprobada.

[10] Debemos destacar que en el Art. 4 de la Ley Núm. 201 de 7 de agosto de 1998, *supra*, se hace mención a "conductor incidental", mientras que en el Art. 11, refiriéndose a la misma persona, se le llama como "conductor autorizado". 26 L.P.R.A. sec. 8060. En su día tendremos que armonizar estas dos (2) disposiciones.

[11] Por otro lado, llama la atención que al enmendar el Art. 4(b) de la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, *supra*, el legislador eliminó toda referencia a los vehículos que tienen una licencia y tablilla de otra jurisdicción que no sea Puerto Rico. Esto se había añadido mediante la Ley Núm. 201 de 26 de diciembre de 1997 (26 L.P.R.A. secs. 8052–8053, 8055 y 8057), ya que el legislador consideró prudente exigir como requisito a estos vehículos que contaran con un seguro. Esta enmienda se hizo con el propósito de dejar claro que dichas personas no están exentas del requisito de tener un seguro de responsabilidad. Parece ser que al redactar la Ley Núm. 201 de 7 de agosto de 1998, *supra*, al legislador se le olvidaron las enmiendas introducidas por la Ley Núm. 201 de 26 de diciembre de 1997.

[12] En su día también tendremos que interpretar qué efecto tendría sobre una acción ordinaria de daños y perjuicios subsiguiente el estar "exento de responsabilidad por los daños" y disfrutar de la misma exención que el dueño del vehículo según

Cualquier persona que no hubiere cumplido con lo establecido en el Art. 4(b), cuyo vehículo de motor no esté asegurado y esté involucrado en un accidente de tránsito con un vehículo de motor asegurado conforme a esta Ley, no tendrá derecho a los beneficios del seguro de responsabilidad obligatorio por los daños que sufriere su vehículo de motor. Asimismo, el dueño de un vehículo de motor asegurado de acuerdo a esta Ley, que causare daños a un vehículo de motor no asegurado, *estará exento de responsabilidad por los daños* que cubre el seguro provisto por esta Ley, hasta el límite del mismo. De igual manera un conductor autorizado de un vehículo de motor asegurado que causare daño a un vehículo de motor no asegurado, disfrutará de la misma exención que *disfrutará el dueño del vehículo.* (Énfasis suplido.) 26 L.P.R.A. sec. 8060(b).

Como conclusión lógica de la discusión que precede, surge con meridiana claridad que la Sec. 16-102A de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, no ha perdido vigencia ni se ha vuelto inoperante con la aprobación de la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor.([13])

V

Actualmente el texto de la Sec. 16-102A de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, dispone lo siguiente:

---

dispone el Art. 11(b) de la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, *supra*.

([13]) No entraremos a discutir en este caso las implicaciones que tendría sobre el seguro de responsabilidad obligatorio si el Secretario del Departamento de Transportación y Obras Públicas revocara o denegara expedir una autorización para transitar vehículos de motor y arrastre por las vías públicas, según lo disponen las Secs. 2–301 y 2–701 de la Ley de Vehículos y Tránsito de Puerto Rico, según enmendadas, 9 L.P.R.A. secs. 461 y 571, respectivamente. Véase el inciso (c) del Art. 4 de la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, 26 L.P.R.A. sec. 8053(c), que dispone lo siguiente:

"El seguro de responsabilidad obligatorio *estará vigente durante el término de tiempo por el cual se expida la licencia del vehículo de motor* y sólo se podrá cancelar cuando el objeto del seguro desaparezca, o en aquellas circunstancias en que se garantice que el vehículo de motor continuará asegurado por un seguro con una cubierta similar o mayor a la del seguro de responsabilidad obligatorio ...." (Énfasis suplido.)

En adición a la pena que se imponga al conductor por la infracción cometida bajo las disposiciones de este Capítulo, el tribunal *deberá fijar una cantidad razonable para el pago de daños*. El pago de daños consiste en la obligación impuesta al conductor por el tribunal de pagar a la parte perjudicada una suma en compensación por los daños y pérdidas que hubiere causado a su propiedad, como consecuencia de su acto delictivo.

Dicho pago deberá ser fijado para ser satisfecho en dinero o la entrega de bienes equivalentes a los que fueron destruidos o dañados o por pago de reparación directa de los daños. Las cantidades así pagadas o de los bienes entregados se deducirán de la suma que el tribunal pueda imponer por sentencia en caso de surgir de los hechos una demanda de daños y perjuicios. El pago de daños que autoriza esta sección no incluye daños a la persona o los sufrimientos y angustias mentales.

No se fijará el pago de daños en aquellos casos en que el conductor demuestre al tribunal que posee un seguro de responsabilidad pública que cubre los daños causados por él o que la víctima ya ha sido compensada.

Podrá procederse a la ejecución de la sentencia imponiendo el pago de daños que autoriza esta sección, en igual forma que si se tratare de una sentencia dictada en un pleito civil ordenando el pago de una cantidad, según se establece en la Regla 176 de las de Procedimiento Criminal de 1963 Ap. II del Título 34. (Énfasis suplido.)

A la luz del historial legislativo y del texto final de la sección transcrita, es forzoso concluir que la Asamblea Legislativa forjó un esquema remediativo novel, sui géneris, mediante el cual se satisfaría de una manera más ágil, menos onerosa y adecuada, una cantidad razonable para el pago de los daños infligidos a la propiedad, resultado de una violación a la Ley de Vehículos y Tránsito de Puerto Rico. La eliminación de toda referencia a la pena de restitución y su sustitución por la fijación de *una cantidad razonable para el pago de daños*, unido a la enmienda disponiendo que se trate la sentencia como una dictada en un pleito civil ordinario, nos permiten interpretar que la Sec. 16–102A, *supra*, implementa un procedimiento de naturaleza civil sumario. De resultar convicto el conductor de un automóvil por violaciones a la Ley de Vehículos y Tránsito

de Puerto Rico, el tribunal procederá subsiguientemente, sin necesidad de que medie solicitud de la parte perjudicada, con el procedimiento civil sumario. En dicho procedimiento se utilizará la determinación sobre negligencia criminal que se deriva de la declaración de culpabilidad, para proceder con la fijación de los daños.

Como regla general, "[l]os hechos probados en una causa penal, aun cuando no son concluyentes al punto de excluir su relitigación en la acción civil de daños y perjuicios originada de aquéllos, constituyen evidencia prima facie de su existencia, admisible en el pleito civil". *Toro Lugo v. Ortiz Martínez*, 105 D.P.R. 229, 231 (1976). En este sentido, manifestamos que "[c]onocido en la esfera criminal un hecho que reviste los caracteres de culpa o negligencia, a cuya causa se puso término con sentencia, no queda prejuzgada la responsabilidad civil que del mismo pueda derivarse, ni excluido el pleito civil, toda vez que la anterior sentencia no constituye obstáculo de cosa juzgada". Íd., 234. Sin embargo, recientemente reconocimos que la norma de admisibilidad consagrada en *Toro Lugo v. Ortiz Martínez*, supra, había sido modificada por la Regla 65(V) de Evidencia, 32 L.P.R.A. Ap. IV. *Maysonet v. Granda*, 133 D.P.R. 676 (1993). Tal modificación limitó la admisibilidad de una sentencia de convicción a los casos de delitos graves. La exclusión de una sentencia de convicción por la comisión de delitos menos graves obedeció al escaso valor probatorio que la misma representa, ausente un incentivo económico y libertario para litigar. A estos efectos, señalamos en *Maysonet v. Granda*, supra, pág. 686, que "la exclusión de los delitos menos graves se concibió principalmente para considerar los casos por infracción a la ley de tránsito, donde el ciudadano promedio, muchas sin consultar un abogado, prefiere, aún cuando considere que tiene la razón, pagar una multa y continuar con su rutina diaria".

La aprobación de la Sec. 16–102A, *supra*, alteró el estado de derecho en materia probatoria, con relación al

efecto de la declaración de culpabilidad que medie por la comisión de un delito menos grave, conforme a la Ley de Vehículos y Tránsito de Puerto Rico. A manera de excepción, la negligencia criminal derivable de una declaración de culpabilidad es concluyente para efectos de fijar en el subsiguiente procedimiento de carácter civil sumario una cuantía razonable para los daños causados a la propiedad. En las circunstancias particulares de este caso, la determinación sobre negligencia criminal derivable de la declaración de culpabilidad, facilitará y aligerará el procedimiento para fijar dichos daños. Cónsono con la intención legislativa, yace como premisa que por requerirse un mayor grado de prueba para establecer la negligencia criminal, la negligencia civil debe entenderse subsumida en la primera, por exigir menor rigor y grado de prueba. Así las cosas, es permisible la utilización de una determinación sobre negligencia criminal para fijar los daños a la propiedad.

Ahora bien, la existencia de negligencia criminal no obsta para que el tribunal determine el grado de negligencia incurrido por el conductor convicto, a los fines de establecer los daños. En el contexto de la Ley de Vehículos y Tránsito de Puerto Rico, comete un delito menos grave el conductor de un vehículo de motor o de arrastre que al incurrir en una falta administrativa, a su vez causa o *contribuye a causar un accidente* que ocasiona la lesión de alguna persona o daños a la propiedad ajena, 9 L.P.R.A. sec. 1872.[14] Obsérvese que esta sección tipifica como conducta constitutiva de delito menos grave, tanto la de quien resulta único causante del accidente como la del quien contribuye a causarlo. Entiéndase por esto que la determinación de culpabilidad que pueda mediar en el ámbito criminal con relación al accidente no necesariamente excluye la

---

[14] Para el caso de conversión de una falta administrativa a delito menos grave, el tribunal penalizará con multa que no excederá de doscientos cincuenta dólares ($250) o cárcel que no excederá de treinta (30) días, o ambas penas a su discreción.

posible existencia de cocausantes del delito o acto negligente, como tampoco es necesariamente excluyente de la culpa o negligencia civil en que hayan podido incurrir otras personas involucradas en él.

En reconocimiento de las innumerables circunstancias que puedan suscitarse al ocurrir un accidente automovilístico y de la naturaleza remedial del procedimiento civil sumario, cuyo propósito es conceder a la parte perjudicada *una cantidad razonable para el pago de los daños causados a su propiedad,* se debe permitir a la representación legal de la conductora Agostini Rodríguez levantar la defensa sobre negligencia comparada en el procedimiento de carácter civil sumario. Esto no tiene el efecto de desvirtuar automáticamente el carácter sumario del procedimiento. A manera de ejemplo, cabe mencionar el procedimiento sumario para la reclamación de salarios, al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3118–3133. En éste se le permite al querellado levantar todas las defensas y objeciones al momento de presentar su alegación responsiva. 32 L.P.R.A. sec. 3120.

Debemos destacar que, contrario a la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, la Sec. 16–102A, *supra,* no provee un tope o una cantidad máxima que ha de ser concedida. Esta sección solamente expresa que la cuantía que vaya a concederse será una "suma razonable". Por su parte, la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor establece específicamente que la cuantía máxima a concederse será de tres mil dólares ($3,000). Asimismo, dispone que el sistema de compensación que se establece no coartará el derecho que tenga cualquier reclamante de acudir a los tribunales de justicia cuando quiera obtener compensación adicional a la que le provea el seguro. Esto significa que la parte perjudicada puede acudir al Tribunal de Primera

Instancia con una acción ordinaria de daños y perjuicios o con la acción apropiada. De otra parte, la Sec. 16–102A, *supra*, establece que "[n]o se fijará el pago de daños en aquellos casos en que el conductor demuestre al tribunal que posee un seguro de responsabilidad pública *que cubre los daños causados por él* o que la víctima ya ha sido compensada". (Énfasis suplido.) 9 L.P.R.A. sec. 1872a. Esto se podría interpretar de dos (2) maneras, teniendo en mente la relación entre estas dos (2) leyes y el propósito de la Asamblea Legislativa al aprobarlas: primero, que si los daños causados en un accidente a la propiedad de una persona resultan ser mayores a la cubierta que ofrece el seguro, el conductor responsable podría estar sujeto al procedimiento sumario de la Sec. 16–102A, *supra*, por la compensación debida, a pesar de estar cubierto por el seguro de responsabilidad obligatorio; o segundo, que la compensación razonable a la que se refiere la Sec. 16–102A, *supra*, es una suma que no excederá de tres mil dólares ($3,000), según dispuso el legislador en la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor. Si excediere esta suma, la única opción disponible para el reclamante sería presentar una acción ordinaria para recobrar el exceso a los tres mil dólares ($3,000) y así poder obtener la cuantía total de daños a que tenga derecho. Esta segunda alternativa nos parece la más razonable y la que mejor cumple con el propósito legislativo tanto de la Ley de Vehículos y Tránsito de Puerto Rico como de la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor. Por lo tanto, la "cantidad razonable" a la que se refiere la Sec. 16-102A de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, como compensación para el pago de daños a la propiedad, no deberá exceder del máximo dispuesto en la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, que en la actualidad es de tres mil dólares ($3,000).

## VI

Con relación al descubrimiento de prueba que se permitiría en un procedimiento al amparo de la Sec. 16–102A, *supra*, el foro de instancia tiene amplia discreción para limitarlo el mismo de forma tal que se evite el que se desvirtúe su carácter sumario. El tribunal vendrá obligado a supervisar directamente los mecanismos de descubrimiento de prueba que habrán de permitirse, tomando en consideración la complejidad o sencillez de las reclamaciones involucradas,[15] el derecho de las partes a tener una defensa adecuada y sobre todo el carácter remedial de la Sec. 16–102A, *supra*. Recuérdese que la determinación que el tribunal efectuare en un procedimiento de esta índole, opera sin perjuicio de que las partes incoen una acción civil ordinaria para reclamar daños y perjuicios, en la cual disfrutarán de las más amplias garantías procesales. Dada la naturaleza remedial especial sumaria del procedimiento civil que establece la Sec. 16–102A, *supra*, no constituirá cosa juzgada la referida determinación sobre negligencia comparada. Para armonizar y hacer viable este esquema, dicha sección permite que se deduzcan las cantidades pagadas de la suma que el tribunal pueda imponer como resultado de la acción civil ordinaria. En todo caso, la acción civil ordinaria provee para un ajuste de las cantidades correspondientes.

## VII

Por las razones anteriormente esbozadas, disentimos de la sentencia emitida por este Tribunal.

---

[15] Hay que tener presente que al amparo de la Sec. 16-102A de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, se pueden reclamar daños por *cualquier propiedad* que resulte dañada o pérdida como consecuencia del accidente. Además, *quaere* si la parte perjudicada a que se refiere dicha sección es necesariamente sólo el conductor o dueño del otro vehículo.

— O —

Opinión disidente emitida por el Juez Asociado Señor Corrada Del Río.

El recurso de autos requiere que determinemos, por primera vez, si la defensa de negligencia comparada, provista por el ordenamiento civil, puede ser presentada al momento de determinar el pago de los daños que, según dispone la Sec. 16–102A de la Ley Núm. 9 de 27 de marzo de 1987 (9 L.P.R.A. sec. 1872a) debe ser impuesto por el tribunal de instancia a favor de la parte perjudicada en un accidente de tránsito, proveniente de infracciones a la Ley de Vehículos y Tránsito de Puerto Rico.

Toda vez que dicha medida reparadora de daños, aunque enmarcada dentro de una ley especial de carácter penal, resulta ser de naturaleza civil, y en aras de obtener la máxima economía procesal procurando, a su vez, una solución justa y completa para todas las partes involucradas en el procedimiento, resolvemos en la afirmativa. Como la sentencia emitida por este Tribunal en el día de hoy no lo dispone así, disentimos.

Los hechos pertinentes al caso de autos se exponen a continuación.

I

El 21 de febrero de 1995, el Tribunal de Primera Instancia, Sala Superior de San Juan, Subsección de Distrito, dictó sentencia condenatoria contra la parte aquí peticionaria, Florimar Agostini Rodríguez. Mediante dicha sentencia el tribunal de instancia la encontró culpable de infringir la Sec. 5–304 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 141 de 20 de julio de 1960, según enmendada, 9 L.P.R.A. sec. 895, al conducir un vehículo de motor de manera negligente, invadir el carril contrario y causar un accidente automovilístico.

En consecuencia, dicho foro le impuso como pena una multa de setenta y cinco dólares ($75), más el pago de las costas del procedimiento. Además, señaló la celebración de una vista posterior con el propósito de discutir la imposición del pago de daños dispuesto en la Sec. 16–102A de la referida ley, *supra.*

Así las cosas, la parte aquí peticionaria presentó una moción ante el foro sentenciador, para solicitar que se le permitiera presentar prueba sobre negligencia comparada durante la vista señalada, de manera que el tribunal, al momento de fijar el pago de los daños, pudiera hacer una determinación sobre el grado de negligencia en el cual había contribuido cada una de las partes involucradas en el accidente. Por su parte, el Ministerio Público presentó su objeción a tal solicitud alegando que la causa de acción instada contra la peticionaria era de naturaleza penal, por lo cual ésta no tenía derecho a levantar la defensa de negligencia comparada en la vista para la determinación del pago de daños.

El 21 de febrero de 1995, el tribunal de instancia emitió resolución, en la cual declararon no ha lugar la moción presentada por la peticionaria. No conforme, dicha parte acudió mediante petición de *certiorari* ante el Tribunal de Circuito de Apelaciones, para alegar que la Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, resulta inconstitucional de su faz y en su aplicación, ya que establece un discrimen por condición social y crea clasificaciones discriminatorias. Sostuvo, además, que había errado el foro de instancia al privarle de presentar en la vista sobre la determinación del pago de daños las defensas que el ordenamiento civil garantiza a todo litigante.

El 12 de junio de 1995, el Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, dictó resolución declarando no ha lugar el recurso presentado. En síntesis, concluyó el foro apelativo que el pago de daños dispuesto

en la sección impugnada constituye una compensación de naturaleza civil que se impone a la parte perjudicada bajo unos criterios de cantidad razonable; que dicha disposición no adolece de defecto constitucional alguno; y que la ley no priva a la parte peticionaria de presentar posteriormente una acción civil ordinaria en la cual, en su día, podrá presentar todas las defensas que provee el ordenamiento civil.

Inconforme con el dictamen emitido, la parte peticionaria acudió ante nos mediante petición de *certiorari*, en la cual solicitó la revocación de la resolución recurrida. A través de dicho recurso sostiene, en síntesis, que la Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, establece clasificaciones discriminatorias y sospechosas, y que, al privar al conductor imputado de presentar las defensas provistas por el ordenamiento procesal civil, provee un mecanismo incompleto e injusto para las reclamaciones de daños materiales si se compara con el mecanismo provisto para las reclamaciones efectuadas por la vía civil ordinaria. En consecuencia, cuestiona la validez constitucional de la disposición aludida sosteniendo que violenta el debido proceso de ley y la igual protección de las leyes.[1] Decidimos revisar, y a tales efectos emitimos resolución mediante la cual expedimos el auto presentado.

_____

[1] Específicamente, la parte peticionaria formuló los siguientes señalamientos de error:

*"PRIMER ERROR*

"Erró el Honorable Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, al confirmar una resolución de la Honorable Jueza Katheryne Silvestri que resuelve que la aplicación que el Tribunal impartiera a la Ley de Restitución (Ley # 9 del 27 de marzo de 1987, 9 L.P.R.A. sec. 1872(a)) no resulta inconstitucional en su aplicación al crear una clasificación discriminatoria y sospechosa entre reclamaciones de daños de naturaleza civil y reclamaciones de daños de naturaleza criminal, así como reclamaciones de daños materiales vis a vis reclamaciones de daños físicos, morales y mentales.

*"SEGUNDO ERROR*

"Erró el Honorable Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, al confirmar una resolución de la Honorable Jueza, Katheryne Silvestri,

## II

La correcta adjudicación del caso de epígrafe requiere determinar, en primer lugar, si la imposición del pago de daños establecida mediante la referida Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico resulta ser una medida de naturaleza civil o, por el contrario, una de carácter penal.

El 27 de marzo de 1987, la Asamblea Legislativa aprobó la Ley Núm. 9, la cual, a su vez, enmendó la Ley de Vehículos y Tránsito de Puerto Rico a los fines de añadir la Sec. 16–102A, *supra*. A través de dicha enmienda se incorporó un procedimiento mediante el cual, además de la sanción penal que fuera impuesta al conductor del vehículo por la infracción cometida según las disposiciones de la Ley de Vehículos y Tránsito de Puerto Rico, en aquellas situaciones en que el conductor infractor no posea un seguro de responsabilidad pública que cubra los daños causados, el tribunal sentenciador deberá fijar una cantidad razonable a pagar por los daños y las pérdidas a la propiedad que sufra la parte perjudicada en el accidente. De esta forma se procuró la consolidación de la acción criminal con la acción civil para compensar por los daños sufridos.

Con anterioridad a la aprobación de esta medida, el foro de instancia se limitaba a imponer una sanción penal al

---

que no resolvió que la Ley de Restitución, contenida en la Ley de Vehículos y Tránsito, antes citada es una inconstitucional de su faz al crear un discrimen por razón de status, origen o condición social o económica, en el trato de las personas envueltas en un accidente de automóvil, al distinguir entre personas aseguradas y no aseguradas.

*"TERCER ERROR*

"Erró el Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, al confirmar una resolución de la Honorable Jueza, Katheryne Silvestri que resuelve que la Ley de Restitución contenida en la Ley de Vehículos y Tránsito, antes citada viola el principio de la igual protección de las leyes al crear un mecanismo judicial incompleto, inequitativo e injusto para las reclamaciones de daños materiales, si se compara con el mecanismo provisto por las Reglas de Procedimiento Civil de 1979, para las reclamaciones efectuadas vía la litigación civil, para esos y otros daños." Petición de *certiorari*, págs. 3–4.

conductor imputado, y quedaba a discreción de la parte perjudicada presentar posteriormente una acción dirigida a recobrar los daños causados a su propiedad. Ello con las correspondientes dilaciones que conlleva un proceso de tal naturaleza. Ante esta situación, a través de la referida Ley Núm. 9, la Legislatura instauró un proceso orientado a proveer a la comunidad puertorriqueña un mecanismo eficaz y sin mayores dilaciones para la compensación inmediata de los referidos daños, sin necesidad de instar una acción civil ordinaria de daños y perjuicios de manera independiente.(²)

Ahora bien, la concepción, introducción e implantación de tan novedoso concepto ha provocado la interrogante referente a si la medida reparadora del pago de daños se encuentra enmarcada dentro de la esfera del derecho civil o del derecho penal. No obstante, entendemos que tanto el lenguaje de la ley como todo su historial legislativo indubitadamente revelan que, aunque enmarcada dentro de un proceso penal, la medida considerada por la referida Sec. 16–102A a todas luces resulta ser de naturaleza civil. Veamos.

En su inicio, la innovadora idea de imponer al conductor que cometiese una infracción a la Ley de Vehículos y Tránsito de Puerto Rico, la obligación de resarcir a la parte perjudicada por los daños causados a su propiedad, surgió como una sanción de carácter penal a través de una pro-

---

(²) Véase el Informe Conjunto de las Comisiones de lo Jurídico y de Transportación y Obras Públicas de 26 de mayo de 1986.

De otra parte, adviértase, que el Gobierno de Puerto Rico, aún preocupado con el problema asociado a la pérdida económica que resulta de los daños no compensados que sufren los vehículos de motor en accidentes de tránsito, el 27 de diciembre de 1995 aprobó la Ley Núm. 253 (26 L.P.R.A. sec. 8051 *et seq.*) a los fines de establecer que toda persona que obtenga por primera vez, o renueve la licencia de un vehículo de motor requerida por la Ley de Vehículos y Tránsito de Puerto Rico, vendrá obligada a obtener un seguro de responsabilidad que cubra los daños ocasionados a los vehículos en *caso de accidentes de tránsito*. Sin embargo, a tenor con el Art. 16 de dicha Ley, 26 L.P.R.A. sec. 8052 n., aunque ella entró en vigor inmediatamente después de su aprobación, el sistema de seguro de responsabilidad obligatorio no sería exigible hasta el 1ro de enero de 1998. Además, la referida ley fue aprobada con posterioridad a los hechos de este caso por lo que no resulta de aplicación a éste.

puesta enmienda al Art. 49A del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3212, referente a la pena de restitución. En términos generales, se propuso que la pena de restitución que se pretendía establecer por el referido Art. 49A sería impuesta por el tribunal sentenciador al conductor convicto que hubiese causado daños a la parte perjudicada como consecuencia de un accidente de vehículo de motor o a causa de cualquier violación a la Ley de Vehículos y Tránsito de Puerto Rico.[3] En tales casos, dicha pena sería impuesta de manera independiente a la pena dispuesta por la infracción cometida, e irrespectivamente de cualquier acción civil que en su día pudiese incoar la parte perjudicada.

Posteriormente, la Legislatura consideró la medida propuesta y presentó un proyecto sustitutivo, a través del cual, aunque se reiteró disponer dicha pena como una de restitución que se ha de imponer al conductor convicto independientemente de la pena impuesta por la infracción cometida, se dispuso incluirla, ya no como parte del Código Penal, sino de manera expresa en el texto de la Ley de Vehículos y Tránsito de Puerto Rico a través de la Sec. 16–102A sobre pago de daños, *supra*.[4]

---

[3] Véanse: el P. del S. Núm. 389 de 26 de marzo de 1985 y el P. del S. 662 de 21 de noviembre de 1985.

[4] A tales efectos, el Sustitutivo a los P. del S. 389 y 662 de 26 de marzo de 1986, 10ma Asamblea Legislativa, 2da Sesión Ordinaria, págs. 1–2, aprobado por el Senado el 16 de abril de 1986, disponía lo siguiente:

"Sección 16–102A — Pago de Daños

"En adición a la pena que se imponga al *convicto* por la infracción cometida bajo las disposiciones de esta Ley, el tribunal podrá imponer la *pena de restitución*. Esta *pena* consiste en la obligación impuesta al convicto por el tribunal de pagar a la parte perjudicada una suma en compensación por los daños y pérdidas que hubiere causado a su propiedad, como consecuencia de su acto delictivo.

"En delitos menos grave la *pena de restitución no excederá de quinientos (500) dólares*.

"La *pena de restitución* no incluirá sufrimientos y angustias mentales.

"Dicha *pena* podrá ser impuesta para ser satisfecha en dinero o la entrega de bienes equivalentes a los que fueron destruidos o dañados o por pago de reparación directa de los daños. Las cantidades así pagadas o de los bienes entregados se deducirán de la suma que el tribunal pueda imponer por sentencia en caso de surgir de los hechos una demanda de daños y perjuicios.

Así las cosas, el nuevo proyecto de ley presentado fue sometido al correspondiente proceso de estudio y debate, donde la Asamblea Legislativa recalcó claramente que la intención de la medida era a los fines de que en todo caso, aun en aquellos en que mediase alegación de culpabilidad por parte del acusado, se requeriría un desfile de prueba ante el tribunal sentenciador sobre el monto de los daños sufridos. En otras palabras, la prueba sobre los daños sufridos a la propiedad sería independiente de la prueba presentada para establecer los elementos del delito. Con tal requerimiento, el tribunal podría estar en posición de ajustar adecuadamente la cantidad que se ha de imponer como pena de restitución, a aquellos daños que realmente se pudieran probar.

Además, tomando en consideración la discreción otorgada al tribunal sentenciador para ajustar la *pena de restitución* a la cuantía de los daños realmente sufridos, se ponderó la posibilidad de que se presentara una alegación referente al viso de inconstitucionalidad que podría acompañar a la medida propuesta en aquellas situaciones en que el tribunal llegara a imponer una pena de restitución por daños que excediese la cantidad de quinientos dólares ($500), sin la celebración del correspondiente juicio por jurado.[5]

Posteriormente, se designó una Comisión de Conferencia para intervenir en las discrepancias surgidas en relación con los proyectos de ley propuestos, y el 2 de marzo de 1986 dicha Comisión presentó su informe. A través del referido informe, la Comisión avaló la aprobación de la me-

---

"No se impondrá la *pena de restitución* en aquellos casos en que el convicto demuestre al tribunal que posee un seguro de responsabilidad pública que cubre los daños causados por él o que la víctima ya ha sido compensada por la compañía de seguros." (Énfasis suplido.)

[5] Véase XXIX (Núm. 32) Diario de Sesiones 2041–2044 (1986).

La controversia referente a la posible violación al derecho a juicio por jurado surgió ya que, aunque el Sustitutivo a los P. del S. 389 y 662 establecía que en los casos de delitos menos graves, la pena de restitución no excedería de quinientos dólares ($500), la Legislatura había propuesto establecer como tope máximo en tales casos la cantidad de mil dólares ($1000).

dida propuesta, pero recomendó ciertas enmiendas dirigidas, en síntesis, a eliminar toda referencia a la "pena de restitución" y disponer tal medida como una de "pago de daños". Finalmente, tras todo el proceso legislativo, tales enmiendas fueron acogidas y el 27 de marzo de 1987 se aprobó la versión final, y su texto actualmente vigente, de la Sec. 16–102A de la Ley Núm. 9, *supra*, la cual dispone lo siguiente:

> *Además de la pena que se imponga al conductor* por la infracción cometida bajo las disposiciones de esta Capítulo, el tribunal deberá fijar una *cantidad razonable para el pago de daños*. El *pago de daños* consiste en la obligación impuesta al *conductor* por el tribunal de pagar a la parte perjudicada una suma en compensación por los daños y pérdidas que hubiere causado a su propiedad, como consecuencia de su acto delictivo.
>
> Dicho pago deberá ser fijado para ser satisfecho en dinero o mediante la entrega de bienes equivalentes a los que fueron destruidos o dañados o por pago de reparación directa de los daños. Las cantidades así pagadas o de los bienes entregados se deducirán de la suma que el tribunal pueda imponer por sentencia en caso de surgir de los hechos una demanda de daños y perjuicios. El *pago de daños* que autoriza esta sección no incluye daños a la persona y los sufrimientos y angustias mentales.
>
> No se fijará el *pago de daños* en aquellos casos en que el *conductor* demuestre al tribunal que posee un seguro de responsabilidad pública que cubre los daños causados por éste o que la víctima ya ha sido compensada.
>
> Podrá procederse a la ejecución de la sentencia imponiendo el *pago de daños* que autoriza esta sección en igual forma que si se tratare de una sentencia dictada en un pleito civil ordenando el pago de una cantidad, según se establece en la Regla 176 de las de Procedimiento Criminal de 1963, en el Título 34, Ap. II. (Enfasis suplido.)

Una simple lectura de la disposición transcrita, pone de relieve el perfil civil impartido a ella. Así lo expresó inequívocamente y sin ambigüedades el legislador en la letra de

la ley(⁶) y, como hemos visto, así se desprende de todo el proceso que llevó a su aprobación final.

Como podrá observarse, con esta nueva versión el legislador reemplazó toda referencia anterior a la frase "pena de restitución" por la de "pago de daños", y eliminó toda alusión a la palabra "convicto", incluyendo en su lugar el término "conductor". De igual forma, se sustituyó el límite monetario impuesto originalmente en lo que hasta entonces era una pena de restitución, por el criterio de "una cantidad razonable para el pago de daños" que habría de ser fijada a favor de la parte perjudicada por el foro sentenciador.

Todo ello resulta claramente indicativo de que la intención de la Legislatura fue la de establecer finalmente una medida reparadora de daños de naturaleza civil, y no una medida de carácter penal. No nos encontramos ante una sanción punitiva de restitución, la cual, aunque también tiene como fin procurar la indemnización como medida de trato justo a la víctima, es una *pena* disponible para castigar por el delito cometido.(⁷)

Por el contrario, se presenta un sistema de indemnización civil con carácter de procedimiento sumario, el cual tiene como único fin obtener la reparación directa de los daños sufridos a la propiedad del perjudicado, de manera independiente a la pena que haya sido impuesta por el acto delictivo. Máxime, si tomamos en consideración que, en la medida en que la aludida Sec. 16–102A no establece límites monetarios respecto al monto que se ha de resarcir por los daños sufridos, de entenderse que ésta es de naturaleza

---

(⁶) Es harto conocido que, cuando una ley es clara y libre de toda ambigüedad, no debe ser menospreciada. Cuando el legislador se ha manifestado en lenguaje inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa. Véanse: Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14; *Alejandro Rivera v. E.L.A.*, 140 D.P.R. 538 (1996); *Cotto v. Depto. de Educación*, 138 D.P.R. 658 (1995); *Col. Int'l. Sek P.R., Inc. v. Escribá*, 135 D.P.R. 647 (1994); *Silva v. Adm. Sistemas de Retiro*, 128 D.P.R. 256 (1991).

(⁷) Véase *Vázquez v. Caraballo*, 114 D.P.R. 272, 276 (1983).

penal existiría el riesgo de incurrir en un proceso con derecho a juicio por jurado en aquellas situaciones en que la cuantía impuesta llegase a ser superior a la suma de quinientos dólares ($500).[8]

Por último, nótese que el hecho de que la medida de resarcimiento de daños se encuentre enmarcada dentro de un proceso penal bajo las disposiciones de la Ley de Vehículos y Tránsito de Puerto Rico, no tiene de por sí el efecto de eliminar la naturaleza civil de ésta.[9] Por el contrario, ello instituye un mecanismo híbrido cuyo objetivo totalmente válido y beneficioso, a los efectos de proveer un procedimiento expedito y sencillo para que el perjudicado pueda hacer valer sus derechos frente al causante de los daños a su propiedad sin necesidad de acudir a la radicación de un pleito civil independiente, justifica plenamente su concepción mixta.[10]

## III

Aclarada la naturaleza de la medida de pago de daños, procede examinar el planteamiento referente a la presentación de las defensas provistas por el ordenamiento civil, tales como la negligencia comparada.

Resulta evidente que, ni el texto vigente de la Sec. 16–

---

[8] En cuanto al derecho a juicio por jurado en aquellos procesos por infracciones cuya pena exceda de los seis (6) meses de reclusión o de los quinientos dólares ($500) de multa, véanse el artículo 12 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3044; *Pueblo v. Martínez Torres*, 116 D.P.R. 793 (1986), y *Duncan v. Louisiana*, 391 U.S. 145 (1968).

[9] Para un análisis sobre la consolidación de la acción civil con la acción penal en la citada Ley Núm. 9, véase a E. Márquez Lizardi, *Examen crítico de la ley que dispone para la compensación de los daños en los casos de accidentes de automóviles*, 30 Rev. Der. Pur. 53 (1990).

[10] Es menester señalar que, en nuestro ordenamiento, los preceptos de carácter mixto penal y civil no resultan del todo extraños. A tales efectos, véase el Art. 158 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4241, referente al incumplimiento de la obligación alimentaria. Procedimiento mediante el cual se establece una sanción penal por dejar de cumplir con la obligación de proveer alimentos a un hijo, y dentro del mismo pleito se dispone, además, para la filiación civil del menor. *Pol Sella v. Lugo Christian*, 107 D.P.R. 540, 546–547 (1978).

102A, *supra*, ni el correspondiente historial legislativo, disponen expresamente sobre el particular. Sin embargo, procedemos a examinar la interrogante suscitada ya que, en el desempeño normal de las funciones de esta Curia, nos corresponde interpretar las leyes cuando, entre otras cosas, éstas no son claras o concluyentes sobre un asunto en particular, y se requiere que se supla una laguna que ha surgido en la ley. *Calderón v. Adm. Sistemas de Retiro*, 129 D.P.R. 1020 (1992); *Pueblo v. Ortega Santiago*, 125 D.P.R. 203 (1990). Ello, no sin antes recordar que al realizar tal interpretación tenemos la obligación de inclinarnos "hacia aquella solución que mejor capte el impacto del estatuto en términos del bienestar general y que mejor perciba la intención legislativa al adoptar la norma enfilada a propiciar el interés público ...". Art. 19 del Código Civil, 31 L.P.R.A. sec. 19; *Goss, Inc. v. Dycrex Const. & Co. S.E.*, 141 D.P.R. 342 (1992); *Col. Int'l. Sek P.R., Inc. v. Escribá*, 135 D.P.R. 647 (1994).

En cumplimiento de tales funciones, resolveríamos que el conductor imputado podrá presentar prueba sobre la negligencia comparada del conductor perjudicado, la cual deberá ser evaluada por el foro sentenciador al momento de fijar la cantidad razonable para el pago de los daños que dispone la referida Sec. 16–102A. Varias razones avalan este resultado.

Primeramente, nada hay en la letra de la ley, ni en su naturaleza o carácter, que impida la presentación de tal defensa. En realidad, nada obstaculiza que la defensa de negligencia comparada sea presentada en la etapa de determinación de pago de daños y que, de prosperar, el foro sentenciador imponga al conductor infractor una cantidad para pagar que realmente corresponda a su grado de culpa o negligencia en relación con los daños sufridos. Más aún, precisamente al permitir la presentación de tal defensa dispondríamos un método adecuado que permitiría al foro sentenciador cumplir con el requerimiento expreso de la

ley a los efectos de imponer el pago de una "cantidad razonable" por los daños causados a la propiedad de la parte perjudicada. Lo cual, a su vez, tendría el efecto de equiparar los derechos, tanto del conductor imputado, como de la parte perjudicada.[11]

Por otro lado, el único planteamiento sobre el particular que ha levantado el Procurador General en su comparecencia ante nos, es a los efectos de que, "[c]onsiderando que la parte peticionaria a lo que se expone es al pago de una cantidad razonable por los daños a virtud de la Ley de Vehículos y Tránsito, nada impide, dentro del pleito civil que inste la parte perjudicada [posteriormente], si alguno, presentar las defensas que estime pertinentes contra las alegaciones de daños". Alegato, pág. 7. Así también lo entendió el foro recurrido al emitir su resolución. No obstante, coincidir con tales planteamientos propiciaría la fragmentación de acciones. Avalar la posición de la parte recurrida, convertiría en un ejercicio fútil la idea de disponer de este tipo de pleitos mediante una sola acción, frustrando el interés primordial que permea todo nuestro ordenamiento jurídico civil de disponer y adjudicar los pleitos con prontitud, y procurar y obtener resultados justos y económicos.

Ciertamente, le asiste la razón a la parte recurrida en cuanto a que no existe impedimento para que, tanto la parte perjudicada como el conductor imputado, presenten posteriormente las acciones civiles ordinarias que estimen convenientes en caso de entender que los agravios sufridos resultan superiores a la indemnización dispuesta por el foro sentenciador.[12] Incluso, así se desprende de la aludida Sec. 16–102A en cuanto dispone que las cantidades

---

[11] Para un estudio sobre el particular, así como de otras interrogantes surgidas tras la aprobación de la Ley en controversia, véase a J.R. Deliz Román, *La ley de pago de daños ¿un "choque" constitucional?*, Instituto de Estudios Judiciales O.A.T., Envío Especial de 16 de diciembre de 1988.

[12] Véase XXIX (Núm. 32) Diario de Sesiones 2042 (1986).

pagadas "se deducirán de la suma que el tribunal pueda imponer por sentencia en caso de surgir de los hechos una demanda de daños y perjuicios".

Sin embargo, al permitir la presentación de tal defensa dentro del proceso de la determinación del pago de daños, fortaleceríamos la efectividad del sistema provisto por la Legislatura al evitar la multiplicidad de acciones litigiosas. De esta manera, favorecemos la fundamental norma de obtener la máxima economía procesal al disponer en su totalidad, y de forma rápida y económica, de la controversia planteada en torno a los daños sufridos a la propiedad. Resultado sensato que, no sólo redundaría en beneficio del orden público y de las partes involucradas en el accidente, sino que, a fin de cuentas, está planteado como uno de los loables objetivos de la ley en controversia.

De otra parte, hemos sostenido que "[s]e propicia una mejor administración de justicia con un procedimiento orientado hacia la integración contrapuesta a la fragmentación". *Pol Sella v. Lugo Christian*, supra, pág. 550. Además, hemos proscrito la multiplicidad de litigios al señalar que, "[p]or imperativo de las Reglas [de Procedimiento Civil] la bifurcación o fragmentación de los procedimientos es indeseable, y se propende por el contrario a la máxima expansión del ámbito de la acción civil trayendo a su núcleo los elementos dispersos de reclamaciones, partes y remedios en orden a la adjudicación integral de la controversia". *Diez Rodríguez v. Guzmán Ruiz*, 108 D.P.R. 371, 378 (1979). Por analogía, tales expresiones aplican al caso de autos.

Ahora bien, en aras de mantener la naturaleza sumaria del procedimiento, entendemos que el foro de instancia tendrá discreción para tomar las medidas conducentes a la más pronta adjudicación de la controversia, pautando la forma y el modo de presentación de tal defensa en la medida que las circunstancias del caso lo ameriten. Dicho foro

deberá procurar mantener un fino balance entre el interés de evitar atrasos innecesarios en los procedimientos, proveyendo para la rápida compensación a los daños que hubiere sufrido la propiedad de la parte perjudicada, y la obtención de una solución completa, justa y equitativa para todas las partes.

Por último, debe quedar claro que distinto sería el caso en que, concurrentemente a la acción provista por la Sec. 16–102A de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, para la compensación por daños y pérdidas sufridas a la propiedad únicamente, se estuviese ventilando una acción civil independiente para solicitar compensación por los daños personales, los sufrimientos o las angustias mentales sufridos por la parte perjudicada. En tal caso, la medida más conveniente y apropiada sería disponer la presentación de la defensa de negligencia comparada dentro del pleito civil independiente.

Además, debe mantenerse presente que, en aquellos casos en que la defensa de negligencia comparada sea planteada por el conductor imputado dentro del proceso de determinación del pago de los daños a la propiedad provisto por la aludida Sec. 16–102A, el cual como hemos expuesto es de naturaleza civil, y el foro sentenciador haga una adjudicación final *en cuanto a la existencia o no de negligencia comparada por parte del perjudicado*, tal adjudicación constituiría una cosa juzgada que no podría ser litigada nuevamente en un pleito civil posterior. Nótese que en tal caso el primer foro habría adjudicado, en los méritos, la procedencia de una defensa que surge de una misma ocurrencia o núcleo de hechos.

IV

Resulta improcedente que nos expresemos sobre la cuestión constitucional que nos fuera planteada. Los tribunales no deben pasar juicio sobre la constitucionalidad de

una ley cuando el caso puede ser resuelto con arreglo a otros criterios y fundamentos, y en consonancia con los mejores fines de la justicia. *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 D.P.R. 181 (1993); *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521 (1993); *Molina v. C.R.U.V.*, 114 D.P.R. 295 (1983); *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982); *Esso Standard Oil v. A.P.P.R.*, 95 D.P.R. 772 (1968); *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958).

## V

Por todos los fundamentos expuestos anteriormente disentimos de la sentencia emitida por este Tribunal.